**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TAREK ELKHOLY**, *et al.*,       ) | |
| ) | |
| *Plaintiffs*,       ) | |
| ) | |
| v.       ) | **Civil Action No.: 1:23-cv-00306-RBW** |
| ) | |
| **THE ROYAL EMBASSY OF THE**       ) | |
| **KINGDOM OF SAUDI ARABIA**, *et al.*,       ) | |
| ) | |
| *Defendants*.       ) | |
| _____       ) | |

**DEFENDANTS' (APPEARING SPECIALLY) MOTION TO DISMISS
THE COMPLAINT AND MOTION TO STRIKE PUNITIVE DAMAGES DEMAND**

Defendants, the Royal Embassy of the Kingdom of the Kingdom of Saudi Arabia and the

Kingdom of Saudi Arabia, appearing specially and contesting jurisdiction under the Foreign

Sovereign Immunities Act, hereby move to dismiss all claims asserted against them in Plaintiffs'

Complaint in their entirety and with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1)

and Federal Rule of Civil Procedure 12(b)(6) and to strike Plaintiffs' demand for punitive damages.

A Memorandum of Points and Authorities in support of the Motion are filed herewith.

Pursuant to Local Civil Rule 7(f), Defendants respectfully request that an oral hearing be

held on Defendants' Motion.

Dated: August 2, 2024                 Respectfully submitted,

_____/s/ Edward Lee Isler_____
Edward Lee Isler, D.C. Bar No. 417076
Lori H. Turner, D.C. Bar No. 495530
Micah E. Ticatch, D.C. Bar No. 1005398
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690

(703) 748-2695 (fax)
eisler@islerdare.com
lturner@islerdare.com
mticatch@islerdare.com
*Attorneys Appearing Specially for Defendants*
*The Royal Embassy of the Kingdom of Saudi Arabia*
*And The Kingdom of Saudi Arabia*

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of August 2024, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Sylvia J. Rolinski, Esq.
Rolinski Law Group, LLC
14915 River Road
Potomac, MD 20854
T: (301) 987-0202 (ext. 1)
F: (301) 263-7100
SJR@Rolinski.com
*Counsel for Plaintiffs*

_____/s/ Edward Lee Isler_____
Edward Lee Isler, DC Bar No. 417076
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
eisler@islerdare.com
*Attorney Appearing Specially for Defendants*
*The Royal Embassy of the Kingdom of Saudi Arabia*
*and The Kingdom of Saudi Arabia*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TAREK ELKHOLY**, *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| **v.** | )   **Case No. 1:23-cv-00306-RBW** |
| | ) |
| **THE ROYAL EMBASSY OF THE** | ) |
| **KINGDOM OF SAUDI ARABIA** *et al.*, | ) |
| | ) |
| *Defendants*. | ) |
| | ) |

**DEFENDANTS' (APPEARING SPECIALLY) MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS AND TO STRIKE**

Edward Lee Isler, DC Bar No. 417076
Lori H. Turner, DC Bar No. 495530
Micah E. Ticatch, DC Bar No. 1005398
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
eisler@islerdare.com
lturner@islerdare.com
mticatch@islerdare.com
*Attorneys Appearing Specially for Defendants*
*The Royal Embassy of the Kingdom of Saudi Arabia*
*and The Kingdom of Saudi Arabia*

## TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................................. 1

II.  STANDARD OF REVIEW ............................................................................. 1

III.  STATEMENT OF FACTS .............................................................................. 2

IV.  ARGUMENT ................................................................................................... 6

    A.  Defendants Are Immune Under the Foreign Sovereign Immunities Act. ............. 6

    B.  The Court Should Dismiss All Claims Brought by Elkholy, Hanna, Bashir, and Zamrawy on the Grounds of *Forum Non Conveniens*. ................................ 10

    C.  No Plaintiff Can State a Claim for Violation of the ADEA or ADA. ................. 13

        1.  The federal discrimination claims for Bashir, Hanna, Zamrawy, and Gariballa must be dismissed because they each failed to properly exhaust their administrative remedies. ...................................................... 14

        2.  Gariballa has released and waived her ADA claim. ................................ 17

        3.  Elkholy has failed to state a plausible claim for age discrimination ......... 19

    D.  Plaintiffs Elkholy, Hanna, Bashir, and Zamrawy Cannot State a Claim for Violation of the DCHRA. ....................................................................... 20

        1.  Defendants are not employers subject to the DCHRA. ........................... 20

        2.  The DCHRA claims brought by Plaintiffs Elkholy, Hanna, Bashir, and Zamrawy are time-barred. ................................................................. 22

    E.  Plaintiffs Gariballa, Bashir, and Zamrawy Cannot State a Claim for Breach of Contract. .................................................................................... 24

        1.  The breach of contract claims for Gariballa, Bashir, and Zamrawy are time-barred. .......................................................................................... 24

        2.  Gariballa's contract claim must be dismissed for the additional reason that her claim is flatly contradicted by the written agreement, and she released all claims. ................................................................................ 25

    F.  To the Extent Any Claim Survives Dismissal, Plaintiffs' Request for Punitive Damages Must be Dismissed. .................................................................. 26

V.  CONCLUSION .............................................................................................. 27

# TABLE OF AUTHORITIES

Other Authorities

*Abhe & Svoboda, Inc. v. Chao*,
  508 F.3d 1052 (D.C. Cir. 2007) ................................................................................. 2

*Al Fayed v. CIA*,
  229 F.3d 272 (D.C. Cir. 2000) ................................................................................. 21

*Am. Freedom Law Ctr. v. Obama*,
  821 F.3d 44 (D.C. Cir. 2016) ................................................................................... 2

*Argentine Republic v. Amerada Hess Shipping Corp.*,
  488 U.S. 428 (1989) ............................................................................................ 6, 7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... 1

*Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*,
  571 U.S. 49 (2013) ............................................................................................... 11

*Azima v. RAK Inv. Auth.*,
  926 F.3d 870 (D.C. Cir. 2019) ............................................................................... 11

*Banneker Ventures, LLC v. Graham*,
  798 F.3d 1119 (D.C. Cir. 2015) ............................................................................. 18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................... 1

*Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*,
  734 F.3d 1175 (D.C. Cir. 2013) ............................................................................... 7

*Blackwell v. SecTek, Inc.*,
  61 F. Supp. 3d 149 (D.D.C. 2014) ......................................................................... 19

*Bread v. Greene*,
  523 U.S. 371 (1998) ............................................................................................. 21

*Chambers v. District of Columbia*,
  249 F.Supp.3d 66, (D.D.C. 2017) .......................................................................... 14

*Crum v. Kingdom of Saudi Arabia*,
  2005 WL 3752271 (E.D. Va. 2005) ........................................................................ 10

*D&S Consulting, Inc. v. Kingdom of Saudi Arabia*,
  961 F.3d 1209 (D.C. Cir. 2020) ............................................................................. 11

*Dahman v. Embassy of the State of Qatar*,
   364 F. Supp. 3d 1 (D.D.C. 2019) ............................................................. 12, 13

*Dahman v. Embassy of the State of Qatar*,
   815 F. App'x 554 (D.C. Cir. 2020) ......................................................... 12, 13

*Davis v. World Sav. Bank, FSB*,
   806 F.Supp.2d 159 (D.D.C. 2011) ............................................................. 26

*Doe v. Fed. Democratic Rep. of Ethiopia*,
   189 F. Supp. 3d 6 (D.D.C. 2016) ............................................................. 21

*Dole Food Co. v. Patrickson*,
   538 U.S. 468 (2003) ................................................................................. 6

*Dyson v. District of Columbia*,
   808 F. Supp. 2d 8, 3 (D.D.C. 2011) ......................................................... 2

*El-Hadad v. United Arab Emirates*,
   216 F.3d 29 (D.C. Cir. 2000) ................................................................... 8

*El-Hadad v. United Arab Emirates*,
   496 F.3d 658 (D.C. Cir. 2007) ................................................................. 8

*Gibbons v. Republic of Ireland*,
   532 F. Supp. 668 (D.D.C. 1982) ............................................................. 27

*Gill v. District of Columbia*,
   872 F. Supp. 2d 30 (D.D.C. 2012) ........................................................... 14

*Gross v. FBL Financial Servs., Inc.*,
   557 U.S. 167 (2009) ............................................................................... 19

*Haynes v. District of Columbia Water and Sewer Auth.*,
   924 F.3d 519 (D.C. Cir. 2019) ................................................................. 14

*Jones v. Washington Metro. Area Transit Auth.*,
   2023 WL 6621100 (D.D.C. 2023) ........................................................... 19

*Jordan v. Evans*,
   404 F. Supp. 2d 28 (D.D.C. 2005) ........................................................... 21

*Keister v. AARP Benefits Comm.*,
   410 F. Supp. 3d 244 (D.D.C. 2019) ......................................................... 26

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ................................................................................. 1

*Kowal v. MCI Commc'ns Corp.*,
  16 F.3d 1271 (D.C. Cir. 1994) ........................................................................... 1

*Marcus v. Geithner*,
  813 F. Supp. 2d 11 (D.D.C. 2011) .................................................................... 21

*Marshall v. Fed. Express Corp.*,
  130 F.3d 1095 (D.C. Cir. 1997) ....................................................................... 14

*Miller v. Downtown Bid Servs. Corp.*,
  281 F. Supp. 3d 15 (D.D.C. 2017) ..................................................................... 2

*Mwabira-Simera v. Sodexho Marriot Mgmt. Servs.*,
  2005 WL 1541041 (D.D.C. 2005) .................................................................... 19

*Ndondji v. InterPark Inc.*,
  768 F. Supp. 2d 263 (D.D.C. 2011) .................................................................... 2

*Nurridin v. Bolden*,
  818 F.3d 751 (D.C. Cir. 2016) ........................................................................... 1

*Obia v. J.P. Morgan Chase & Co.*,
  2020 WL 5411169 (D.D.C. 2020) .................................................................... 14

*Republic of Argentina v. Weltover, Inc.*,
  504 U.S. 607 (1992) ...................................................................................... 7, 8

*Samantar v. Yousuf*,
  560 U.S. 305 (2010) .......................................................................................... 6

*Saudi Arabia v. Nelson*,
  507 U.S. 349 (1993) .............................................................................. 1, 2, 7, 8

*Schermerhorn v. Israel*,
  235 F. Supp. 3d 249 (D.D.C. 2017) .................................................................... 1

*Sturdza v. United Arab Emirates*,
  281 F.3d 1287 (D.C. Cir. 2002) ....................................................................... 21

*Verlinden B.V. v. Cent. Bank of Nigeria*,
  461 U.S. 480 (1983) .......................................................................................... 7

*Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*,
  529 U.S. 765 (2000) ........................................................................................ 21

*Wright v. Howard Univ.*,
  60 A.3d 749 (D.C. 2013) ................................................................................. 25

*Youssef v. Embassy of the United Arab Emirates*,
  2021 WL 3722742 (D.D.C. 2021) ........................................................................ 8

Regulations

28 U.S.C. § 1602 ..................................................................................................... 6

28 U.S.C. § 1604 ..................................................................................................... 7

28 U.S.C. § 1605(a)(2) ........................................................................................... 7

28 U.S.C. § 1606 ................................................................................................... 27

28 U.S.C. 1603(d) .................................................................................................. 7

29 U.S.C. § 626(d)(1)(B) (ADEA) ...................................................................... 14

29 U.S.C. § 626(e) (ADEA) ................................................................................ 14

29 U.S.C. §621 ....................................................................................................... 6

42 U.S.C. § 12101 .................................................................................................. 6

42 U.S.C. § 12117(a) ........................................................................................... 14

42 U.S.C. § 2000e-5 ............................................................................................ 14

42 U.S.C. § 2000e-5(f)(1) (ADA) ....................................................................... 14

D.C. Code § 12-301(7) ......................................................................................... 24

D.C. Code § 2-1401.01 ........................................................................................... 6

D.C. Code § 2-1401.02(10) .................................................................................. 20

D.C. Code § 2-1401.02(21) .................................................................................. 20

D.C. Code § 2-1402.11(a)(1)(A) .......................................................................... 20

D.C. Code § 2-1403.16(a) .................................................................................... 22

Rules

D.C. Super. Ct. R. Civ. P. 6(a)(1)(C) .................................................................. 25

Federal Rule of Civil Procedure 12(b)(1) ......................................................... 1, 2

Rule 12(b)(6) ........................................................................................................... 1

## I.     INTRODUCTION

Defendants, the Royal Embassy of the Kingdom of Saudi Arabia ("Embassy") and the Kingdom of Saudi Arabia ("Kingdom"), appearing specially, submit this Memorandum in Support of their Motion to Dismiss all claims asserted against them in the Complaint (ECF 1) with prejudice, pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.     STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "Under Federal Rule of Civil Procedure 12(b)(1), plaintiffs bear the burden of establishing jurisdiction by a preponderance of the evidence." *Schermerhorn v. Israel*, 235 F. Supp. 3d 249, 255 (D.D.C. 2017).  In accordance with the Foreign Sovereign Immunities Act ("FSIA"), "a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *Saudi Arabia v. Nelson*, 507 U.S. 349, 356 (1993).

To survive a Rule 12(b)(6) motion to dismiss, a Plaintiff must allege enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" cannot survive a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court may "assume the truth of all well-pleaded factual allegations," it "need not, however 'accept inferences drawn by [a] plaintiff[] if such inferences are unsupported by the facts set out in the complaint'" nor must it "accept legal conclusions couched as factual allegations." *Nurridin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

"'In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice.'" *Miller v. Downtown Bid Servs. Corp.*, 281 F. Supp. 3d 15, 18 (D.D.C. 2017) (Walton, J.) (quoting *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007)). As this Court has recognized, "[t]he Court may consider the [U.S. Equal Employment Opportunity Commission] EEOC Notice of Charge of Discrimination and the Dismissal and Notice of Rights attached to the defendant's motion to dismiss without converting the defendant's motion into a motion for summary judgment because both documents are 'public document[s] of which a court may take judicial notice.'" *Miller*, 281 F. Supp. 3d, n.5 (quoting *Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263, 272 (D.D.C. 2011)). Likewise, the Court may take judicial notice of "[District of Columbia Office of Human Rights] DCOHR documents." *Dyson v. District of Columbia*, 808 F. Supp. 2d 8, n.3 (D.D.C. 2011), *aff'd*, 710 F.3d 415 (D.C. Cir. 2013). *See also Ndondji*, 768 F. Supp. 2d at 272 (taking judicial notice of DCOHR administrative complaint).

In addition, when considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the Court "may consider materials outside the pleadings." *Am. Freedom Law Ctr. v. Obama*, 821 F.3d 44, 49 (D.C. Cir. 2016).

### III.   STATEMENT OF FACTS

1.   The Kingdom of Saudi Arabia is a foreign state under the FSIA. Cplt. p. 4, ¶ 8. *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) (recognizing "that Saudi Arabia… qualif[ies] as a 'foreign state' within the meaning of the Act").

2.   The Royal Embassy of the Kingdom of Saudi Arabia is a "foreign state" under the FSIA. *McGee v. Kingdom of Saudi Arabia*, 202 WL 4219816, at *3 (D.D.C. 2020) (recognizing that the Embassy of Saudi Arabia is a foreign state and that "courts in this district have long held that embassies are foreign states for FSIA purposes").

3.      The five Plaintiffs, Tarek Elkholy ("Elkholy"), Atef Hanna ("Hanna"), Iman Gariballa ("Gariballa"), Muhammad Bashir ("Bashir"), and Abdalla Zamrawy ("Zamrawy"), were employed with the Embassy in different positions and their employment with the Embassy ended on various dates between August 2017 and June 2021.  Cplt. pp. 3-4, ¶¶ 2-6, pp. 5-6, ¶¶ 16-20.

*Tarek Elkholy*

4.      Elkholy was employed by the Embassy as an Accounting Clerk and executed an employment contract in connection with his hire.  Cplt. p. 9, ¶¶ 32, 34, Exhibit 1 to Complaint (ECF 1-4).

5.      "Elkholy received [a] termination letter on March 24, 2021 with an effective termination date of June 1, 2021, and he was terminated on June 1, 2021."  Cplt., p. 5, ¶ 16.

6.      Elkholy "filed a Charge of Discrimination with the EEOC on April 14, 2021", and the EEOC "issued a Notice of Right to Sue" on November 14, 2022.  Cplt. pp. 5-6, ¶ 16.  *See also* **Exhibit A** (Elkholy EEOC Charge) and **Exhibit B** (Elkholy Notice of Right to Sue).

7.      In his EEOC Charge, Elkholy alleged discrimination based on age, national origin, and retaliation.  *See* **Exhibit A** (Elkholy EEOC Charge).

8.      Elkholy did not file an administrative complaint with the DCOHR.  *See* **Exhibit C** (Email from DCOHR FOIA Officer).

*Atef Hanna*

9.      Hanna was employed as a Consulate Processing Agent and executed an employment contract at the time of his hire.  Cplt. p. 20, ¶¶ 81, 83, Ex. 2 to Complaint (ECF 1-5)

10.     "Hanna received [a] termination letter on March 24, 2021 with an effective termination date of June 1, 2021, and he was terminated on June 1, 2021."  Cplt. p. 6, ¶ 17.

11.     Hanna filed a Charge of Discrimination with the EEOC on March 8, 2024, alleging discrimination based on race and age, and the EEOC issued a Notice of Right to Sue that same day, stating that it had closed the Charge because the Charge "was not filed within the limits under the law; in other words, you waited too long after the date of the alleged discrimination to file your charge." *See* **Exhibit D** (Hanna EEOC Charge) and **Exhibit E** (Hanna Notice of Right to Sue).

12.     Hanna did not file an administrative complaint with the DCOHR.  *See* **Exhibit C** (Email from DCOHR FOIA Officer).

### *Iman Gariballa*

13.     Gariballa was employed as "the Accounting/Personnel Manager" of the Embassy. Cplt. p. 28, ¶ 118.

14.     "In February 2018, Gariballa formally departed from her role at the Embassy." Cplt. p. 33, ¶ 141.

15.     "On October 23, 2018, the Embassy provided Gariballa" with a severance payment of "$25,385.60."  Cplt. p. 33, ¶ 144.  *See also* **Exhibit F** (Acknowledgement of Receipt of Severance Payment and Full Release of Claims).

16.     "On February 10, 2020, [Gariballa] submitted an Employment Intake Questionnaire alleging discrimination based on national origin" with the DCOHR.  **Exhibit G** (Gariballa DCOHR Inquiry and Dismissal); Cplt. p. 6, ¶ 18.  The DCOHR issued a dismissal on March 18, 2020 for "administrative convenience" and informed Gariballa that she "may wish to file an employment discrimination complaint with the Equal Employment Opportunity Commission" or "contact the EEOC."  *Id.*

*Muhammad Bashir*

17.     Bashir was employed in "an administrative job in the training section of the Air Force in the Embassy office dealing with American training centers, which trained Saudi Students." Cplt. p. 35, ¶ 151.

18.     Bashir executed an Employment Contract for Employees of Saudi Embassies and Consular Offices Overseas.  Cplt. p. 34, ¶ 149, Exhibit 10 to Complaint (ECF 1-13).

19.     "Bashir was terminated by the Embassy on August 1, 2017."  Cplt. p. 6, ¶ 19.

20.     "On February 10, 2020, [Bashir] filed an Employment Intake Questionnaire alleging discrimination based on national origin" with the DCOHR.  **Exhibit H** (Bashir DCOHR Inquiry and Dismissal); Cplt. p. 6, ¶ 19.  The DCOHR issued a dismissal on April 3, 2020 for "administrative convenience" and informed Bashir that he "may wish to file an employment discrimination complaint with the Equal Employment Opportunity Commission" or "contact the EEOC."  *Id.*

*Abdalla Zamrawy*

21.     Zamrawy was employed with the Embassy as a driver.  Cplt. p. 38, ¶ 165.

22.     Zamrawy executed an Employment Contract for Employees of Saudi Embassies and Consular Offices Overseas.  Cplt. p. 38, ¶ 167, Exhibit 11 to Complaint (ECF 1-14).

23.     "Zamrawy was terminated by the Embassy on June 1, 2019."  Cplt. p. 6, ¶ 20.

24.     "On January 10, 2020, [Zamrawy] submitted an Employment Intake Questionnaire alleging discrimination based on national origin, age, and disability" with the DCOHR.  **Exhibit I** (Zamrawy DCOHR Inquiry and Dismissal); Cplt. p. 6, ¶ 20.  The DCOHR issued a dismissal on January 31, 2020 for "administrative convenience" and informed Zamrawy that he "may wish to

file an employment discrimination complaint with the Equal Employment Opportunity Commission" or "contact the EEOC." *Id*. There is no record of him having done so.

*Plaintiffs' Allegations*

25.     Plaintiffs allege four causes of action in the Complaint against Defendants:

Count I – Age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621 *et seq*., as to Elkholy, Hanna, Bashir, and Zamrawy;

Count II – Age discrimination in violation of the DC Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01 *et seq*., as to Elkholy, Hanna, Bashir, and Zamrawy;

Count III – Disability Discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., as to Gariballa, Bashir, and Zamrawy; and

Count IV – Breach of Contract, as to all Plaintiffs.

As shown below, each of these counts is flawed and must be dismissed.

## IV.     ARGUMENT

## A.     Defendants Are Immune Under the Foreign Sovereign Immunities Act.

Congress enacted the FSIA in 1976 "to endorse and codify the restrictive theory of sovereign immunity, and [] to transfer primary responsibility for deciding 'claims of foreign states to immunity' from the State Department to the courts." *Samantar v. Yousuf*, 560 U.S. 305, 313 (2010) (quoting 28 U.S.C. § 1602). The FSIA was enacted to give foreign states "some protection from the inconvenience of suit as a gesture of comity." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 469 (2003).

As the U.S. Supreme Court has observed, the "subject-matter jurisdiction of the lower federal courts is determined by Congress" and "the text and structure of the FSIA demonstrate Congress' intention that the FSIA be the sole basis for obtaining jurisdiction over a foreign state." *Argentine Republic v. Amerada Hess Shipping Corp*., 488 U.S. 428, 433-34 (1989). The FSIA

expressly provides, "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States" subject to certain limited exceptions.  28 U.S.C. § 1604. Consequently, "the FSIA 'must be applied by the district courts in every action against a foreign sovereign, since subject-matter jurisdiction in any such action depends on the existence of one of the specified exceptions to foreign sovereign immunity.'"  *Argentine Republic*, 488 U.S. at 434-35 (quoting *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493 (1983)).

As the U.S. Court of Appeals for the District of Columbia has recognized, "the FSIA begins with a presumption of immunity, which the plaintiff bears the initial burden to overcome."  *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1183 (D.C. Cir. 2013).  Here, Plaintiffs allege that this Court has jurisdiction over the Defendants "based on the commercial activity exception" to the FSIA, which exempts a foreign state from immunity if the "action is based upon a commercial activity carried on in the United States by the foreign state."  28 U.S.C. § 1605(a)(2).  *See also* Cplt. p. 5, ¶ 12.

The FSIA defines "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act" and states that the "commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose."  28 U.S.C. 1603(d).  The Supreme Court has repeatedly held that a "foreign state engages in commercial activity . . . only where it acts 'in the manner of a private player within' the market."  *Saudi Arabia v. Nelson,* 507 U.S. 349, 360 (1993) (quoting *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992)).  Thus, the central issue in determining whether the FSIA's commercial exception applies "is whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type*

of actions by which a private party engages in 'trade and traffic or commerce.'" *Nelson,* 507 U.S. at 360-61 (quoting *Weltover, Inc*., 504 U.S. at 614) (emphasis in original).

"D.C. Circuit precedent 'makes clear that the [mere] employment of personnel by a foreign state is not per se commercial activity under the FSIA'… however, such an employment relationship *can* sometimes be the basis for application of the commercial activity exception for FSIA purposes." *Youssef v. Embassy of the United Arab Emirates*, 2021 WL 3722742, at *6 (D.D.C. 2021) (emphasis in original) (citing *El-Hadad v. United Arab Emirates*, 216 F.3d 29, 31 (D.C. Cir. 2000) and *El-Hadad v. United Arab Emirates*, 496 F.3d 658, 663 (D.C. Cir. 2007)). The U.S. Court of Appeals for the District of Columbia has expressly held that, if the plaintiff "is a civil servant," then the commercial activity exception does _not_ apply, and the defendant is "immune from [] suit." *El-Hadad*, 496 F.3d at 663-64. If the plaintiff "is not a civil servant," then the Court must analyze whether the plaintiff's "work involves the exercise of 'powers that can also be exercised by private citizens, as distinct from those powers peculiar to sovereigns.'" *Id*. (quoting *Saudi Arabia,* 507 U.S. at 360). In determining whether a worker falls within a country's civil service, the D.C. Circuit Court noted:

> There is no definition of "civil service" in the Foreign Sovereign Immunities Act or its legislative history and associated case law, and there are dangers in borrowing or analogizing to get one. . . . We therefore take a flexible and inclusive approach to determining whether a foreign government's employee is a civil servant.

*El-Hadad*, 496 F.3d at 664-65.

The Kingdom of Saudi Arabia maintains a broad view of which workers may fall within the country's civil service. In the *Implementing Regulation For Human Resources in the Civil Service*, published by the Ministry of Civil Service, Kingdom of Saudi Arabia, a covered employee is defined as "any person holding a public civil job in the state or practicing its functions whatever the nature of his work or his job title, whether by appointment or contracting, permanently or

temporarily."[1]  Applying this broad definition of "employees" covered by the Human Resources Regulations for those in the Saudi Arabian civil service supports a finding that each of the Plaintiffs were indeed civil service employees for purposes of FSIA.

Plaintiffs were employed in the following capacities according to the Complaint: (i) Elkholy: Accounting Clerk; (ii) Hanna: Consulate Processing Agent; (iii) Gariballa: Accounting/Personnel Manager; (iv) Bashir: an administrative job in the training section of the Air Force; and (v) Zamrawy: Driver at the Embassy.  Cplt. p. 9, ¶ 33, p. 20, ¶ 81, p. 28, ¶ 118, p. 35, ¶ 151, p. 38, ¶ 165.  Although Plaintiffs make the conclusory allegation that they were not civil servants and their "actions were neither governmental, nor diplomatic or political in nature," the Complaint suggests otherwise.  Cplt. p. 5, ¶ 12.  For example, Elkholy was responsible for "preparing annual Embassy budgets and reports."  Cplt. p. 9, ¶ 33.  Hanna provided services as a consular processing agent and interacted with various Saudi Arabian Consuls.  Cplt p. 20, ¶ 81.  Gariballa prepared "budgets and reports" and verified employee timesheets.  Cplt p. 28, ¶ 118.  Bashir worked "in the training section of the Air Force in the Embassy office dealing with American training centers."  Cplt. p. 35, ¶ 151.  Zamrawy was a driver for high-ranking diplomats and guests.  Cplt. pp. 38, 40, ¶¶ 165, 174.

Although courts in this jurisdiction have found employees working for other governments in similar roles to be outside of the civil service, here, the "flexible and inclusive approach" mandated by the D.C. Circuit to determine whether an employee may be considered as within the foreign nation's definition of civil service compels a finding in this case that the Plaintiffs are indeed civil servants for purposes of the FSIA, and therefore not subject to the commercial

---

[1]  Available at the following web address: https://www.hrsd.gov.sa/sites/default/files/2023-04/Implementing%20Regulation%20for%20Human.pdf.

activities exception.  Such a position would be consistent with the view of Saudi Arabian employees taken by other courts.  *See Crum v. Kingdom of Saudi Arabia*, 2005 WL 3752271, at *5 (E.D. Va. 2005) (holding that the commercial activity exception did not apply and dismissing a case brought by a limousine driver for the Saudi Arabian Embassy).

**B.      The Court Should Dismiss All Claims Brought by Elkholy, Hanna, Bashir, and Zamrawy on the Grounds of *Forum Non Conveniens*.**

As reflected in Exhibits 1, 2, 10, and 11 of the Complaint, the Employment Contracts of Plaintiffs Elkholy, Hanna, Bashir, and Zamrawy each contain mandatory forum selection clauses that provide for adjudication of their claims in the Kingdom of Saudi Arabia.  As such, all claims brought by these Plaintiffs should be dismissed on the grounds of *forum non conveniens*.

Specifically, the Employment Contracts of Elkholy, Hanna, and Zamrawy, which were attached to the Complaint, provide as follows:

> The Arabic version of this contract is the original version. And any complain[t] or claim that may arise over any the provisions of this contract shall be submitted to the Board of Grievances of the Kingdom of Saudi Arabia for settlement. In accordance of the rules and regulations of the board and its procedural rules. The ruling of the board shall be binding and final.

ECF 1-4, 1-5, and 1-14.[2]  Similarly, the Employment Contract of Bashir states:

> The Arabic version of this contract shall be considered an original and any dispute between the two parties over any of the provisions of this contract shall be referred to the Civil Service Bureau in the Kingdom of Saudi Arabia for settlement.  The ruling of the Bureau shall be final.

ECF 1-13.

---

[2] The earlier version of the forum selection clause in these Employment Contracts stated: "The Arabic version of this contract shall be considered an original and any dispute between the two parties over any of the provisions of this contract shall be referred to the Civil Service Bureau in the Kingdom of Saudi Arabia for settlement. The ruling of the Bureau shall be binding final." ECF 1-4, 1-5, and 1-14.

"As the Supreme Court has instructed, 'the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*.'" *D&S Consulting, Inc. v. Kingdom of Saudi Arabia*, 961 F.3d 1209, 1213 (D.C. Cir. 2020) (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 60 (2013)).  "A 'valid forum-selection clause' is 'given controlling weight in all but the most exceptional cases.'" *Id*. (quoting *Atl. Marine Constr. Co*., 571 U.S. at 63).  Therefore, "if a 'forum-selection clause is applicable, mandatory, valid, and enforceable, the court must almost always grant [a] motion to dismiss' on *forum non conveniens* grounds." *Id*. (quoting *Azima v. RAK Inv. Auth*., 926 F.3d 870, 874 (D.C. Cir. 2019)).

The forum selection clause at issue in *D&S Consulting, Inc. v. Kingdom of Saudi Arabia* was strikingly similar to the forum selection clauses in the instant case and provided:

> The grievance council [in Saudi Arabia] shall be assigned for settlement of any disputes or claims arising from the execution of this contract, or related to this contract, or resulting from its dissolution.

*Id*. at 1213.  The U.S. District Court for the District of Columbia held that the forum selection clause was "applicable, valid, and enforceable." *Id*.  In so holding, the Court rejected claims by the plaintiff regarding "the adequacy of the Board of Grievances as a forum", including claims that "Saudi Arabia is an unsafe place to travel, that the judicial system there is neither transparent nor independent, and that the system discriminates against foreign parties and follows deficient substantive and procedural rules." *Id*. at 1214.  *See also Alyan v. Permanent Mission of Saudi Arabia to the United Nations*, 2021 WL 1946078, at *2 (S.D.N.Y. 2021) (dismissing plaintiffs' claims for severance pay on *forum non conveniens* grounds and rejecting plaintiffs' assertions that "a trial in Saudi Arabia 'would be so difficult, inconvenient, and potentially dangerous that [plaintiffs] [would] be effectively deprived of their day in court'").

Similarly, in *Dahman v. Embassy of the State of Qatar*, 815 F. App'x 554 (D.C. Cir. 2020), the United States Court of Appeals for the District of Columbia again upheld a forum selection clause that required the dispute (involving claims of discrimination) to be adjudicated in a foreign country.  In that case, the Embassy of Qatar employed the plaintiff under an employment contract, which stated that his employment would expire when he reached age 64.  *Id*. at 556.  Following his termination, the plaintiff filed suit, alleging age discrimination in violation of the ADEA and DCHRA.  The Embassy of Qatar moved to dismiss on *forum non conveniens* grounds based on the forum selection clause contained in Mr. Dahman's employment contract, which stated:

> All disputes arising under this Local Employment Contract shall first be brought before the Administrative Officer of the Embassy.  The Employee shall have the right to appeal any decision by the Administrative Officer to the Ambassador at the Embassy of the State of Qatar… The decision of the Ambassador shall be final. After exhausting the foregoing dispute resolution procedure, any remaining dispute, controversy or claim arising out of or relating to this Local Employment Contract, or the breach, termination or invalidity thereof, shall be settled exclusively by arbitration… The number of arbitrators shall be three; the place of arbitration shall be Doha, Qatar.

*Dahman v. Embassy of the State of Qatar*, 364 F. Supp. 3d 1, 4-5 (D.D.C. 2019).

The *Dahman* court held, first, that the forum selection clause was fully enforceable, and, second, that the forum selection clause encompassed Mr. Dahman's discrimination claims because the "thrust of his suit is that Qatar terminated him for improper reasons [and] the ending of his employment [was] unquestionably related to his employment and the contract that governed it." *Dahman*, 364 F. Supp. 3d at 8.  The court also rejected Mr. Dahman's argument that "enforcement of the clause would contravene the strong public policy" of being able to litigate ADEA and DCHRA claims in U.S. federal court and further rejected his assertion that "discrimination claims would not be vindicated in Qatar."  *Id*. (internal citations omitted).  Accordingly, the District Court dismissed the case on the grounds of *forum non conveniens*.  *Id*. at 9.

The dismissal on *forum non conveniens* grounds was affirmed by the U.S. Court of Appeals

for the District of Columbia.  In affirming the dismissal, the Court of Appeals reasoned as follows:

> Dahman did not present enough evidence to overcome the presumption that the forum-selection clause in his employment agreement is enforceable. Dahman contended that enforcing the clause would contravene the District's public policy of eliminating age discrimination because Qatar would not vindicate his claims. In support of that latter assertion, Dahman said that "Qatari law or policy, as articulated to Mr. Dahman by Embassy officials and supported by Mr. Dahman's Local Employment Contract with Defendants, supports the mandatory retirement of its citizens over the age of 64.". . . . He also claimed that the defendants' conduct would not be held to "the same high standard of social justice" as it would in the District. . . . But those statements, without more, do not establish that Qatar will leave Dahman entirely without a remedy, especially when it is conceivable that the arbitral panel dictated by the employment agreement could apply U.S. law to the present dispute. . . . Nor do the inconveniences to Dahman of arbitrating in Qatar demonstrate that he effectively will be deprived of his day in court. Dahman did not make the "strong showing" required to render the forum-selection clause unenforceable.

815 F. App'x at 558 (citations omitted).

As in *Dahman*, the forum selection clauses contained in the employment contracts of

Elkholy, Hanna, Bashir, and Zamrawy provide that disputes arising over the contract shall be

resolved in Saudi Arabia.  Therefore, because the claims brought by Elkholy, Hanna, Bashir, and

Zamrawy are all based on their employment and the contracts underlying their employment, all

claims brought by these Plaintiffs must be dismissed on *forum non conveniens* grounds.

**C.**     **No Plaintiff Can State a Claim for Violation of the ADEA or ADA.**

In Count I, Plaintiffs Elkholy, Hanna, Bashir and Zamrawy allege claims of age

discrimination under the ADEA.  In Count III, Plaintiffs Gariballa, Bashir and Zamrawy allege

claims of disability discrimination under the ADA.  As stated below, other than Elkholy's age

discrimination claim, each of these claims are subject to dismissal for failure to timely exhaust

administrative remedies.  Moreover, Elkholy's claim is subject to dismissal because he has not

stated a plausible claim.  Lastly, Gariballa's claim is subject to dismissal for the additional reason that she released her claims.

1. <u>The federal discrimination claims for Bashir, Hanna, Zamrawy, and Gariballa must be dismissed because they each failed to properly exhaust their administrative remedies.</u>

Prior to filing a civil action under the ADA or ADEA, a plaintiff must exhaust their administrative remedies by filing a Charge of Discrimination with the EEOC or the appropriate state agency.  *See, e.g., Marshall v. Fed. Express* Corp., 130 F.3d 1095, 1098 (D.C. Cir. 1997) (ADA); *Haynes v. District of Columbia Water and Sewer Auth.*, 924 F.3d 519, 526 (D.C. Cir. 2019) (ADEA).  The Charge of Discrimination must be filed within 300 days of the alleged discrimination.  *See* 42 U.S.C. § 12117(a) (ADA provision incorporating 42 U.S.C. § 2000e-5); 29 U.S.C. § 626(d)(1)(B) (ADEA).

Following the completion of the investigation of a Charge of Discrimination and issuance of a Right to Sue Notice, a plaintiff may bring their federal discrimination claims in court, as long as their claim is filed within 90 days of the agency's dismissal.  *See Haynes*, 924 F.3d at 524 (ADA); *Gill v. District of Columbia*, 872 F. Supp. 2d 30, 34 (D.D.C. 2012) (ADEA).  *See also* 42 U.S.C. § 2000e-5(f)(1) (ADA); 29 U.S.C. § 626(e) (ADEA).

Importantly, the only claims that may be asserted in the court action are those alleged in the Charge of Discrimination.  *See, e.g., Marshall,* 130 F.3d at 1098.  Federal discrimination claims asserted outside the Charge are subject to dismissal for failure to exhaust administrative remedies. *See*, *e.g*., *Haynes*, 924 F.3d at 528-29 (dismissing race and age discrimination claims under Title VII and the ADEA where plaintiff's Charge only alleged disability discrimination); *Chambers v. District of Columbia*, 249 F. Supp. 3d 66, 69-70 (D.D.C. 2017) (Walton, J.) (dismissing age discrimination and hostile work environment claims where underlying Charge only included claims of gender-based discrimination and retaliation)*; Obia v. J.P. Morgan Chase*

& Co., 2020 WL 5411169, at *4 (D.D.C. 2020) (dismissing plaintiff's claims based on "race, national origin, genetic information, matriculation, credit information, religious beliefs, [and] personal appearance" where plaintiff's Charge only asserted discrimination based on disability).

> ### a. Bashir's federal discrimination claims must be dismissed for failure to exhaust administrative remedies.

Bashir was terminated on August 1, 2017 and claims to have filed a Charge with the DCOHR, not the EEOC. Cplt. p. 6, ¶ 19. DCOHR records indicate that, on "February 10, 2020 [Bashir] filed an Employment Intake Questionnaire alleging discrimination based on national origin" with the DCOHR. **Exhibit H** (Bashir DCOHR Inquiry and Dismissal). On April 3, 2020, the DCOHR dismissed the Intake Questionnaire for "administrative convenience" and informed Bashir that he "may wish to file an employment discrimination complaint with the Equal Employment Opportunity Commission" or "contact the EEOC." *Id.*

Even if the DCOHR Intake Questionnaire was somehow sufficient to constitute an EEOC Charge for Bashir's federal claims (even though there is no evidence that it was cross-filed with the EEOC), the Intake Questionnaire was filed <u>over 900</u> days after his termination – exceeding the 300-day limitation period by nearly two years. Furthermore, the Intake Questionnaire only identified "national origin" as the basis of his claim – not age or disability, which are the federal claims asserted in Counts I and III of the Complaint. Lastly, Bashir does not (and cannot) claim that he ever received a Right to Sue notice from the EEOC. Moreover, *even if* the DCOHR dismissal were considered equivalent to an EEOC Right to Sue, Bashir waited almost three years after that dismissal before filing this lawsuit, which is significantly outside of the 90-day filing requirement. In sum, Bashir fails to meet the procedural requirements under the ADEA and ADA, and his claims under those statutes should be dismissed with prejudice.

**b.      *Hanna's federal discrimination claim must be dismissed as untimely filed.***

"Hanna received a termination letter on March 24, 2021." Cplt. p. 6, ¶ 17.  In the Complaint, Hanna alleges that he filed a Charge with the EEOC in May 2021, which would have been within the ADEA's requisite 300-day filing period. *Id*.  However, this allegation is not accurate.  In reality, Hanna filed his EEOC Charge on March 8, 2024. *See* **Exhibit D** (Hanna EEOC Charge).[3]  The EEOC dismissed Hanna's Charge that same day on the grounds that his "charge was not filed within the time limits under the law." **Exhibit E** (Hanna Notice of Right to Sue).  Because Hanna waited over approximately two years before filing his EEOC Charge, it is untimely, and Hanna's ADEA claim in Count I should be dismissed with prejudice.

**c.      *Zamrawy's federal discrimination claims must be dismissed as untimely filed.***

Zamrawy was terminated on June 1, 2019 and claims to have filed a Charge with the DCOHR, not a Charge with the EEOC. Cplt. p. 6, ¶ 20.  DCOHR records indicate that, on "January 10, 2020 [Zamrawy] submitted an Employment Intake Questionnaire alleging discrimination based on national origin, age, and disability" with the DCOHR. **Exhibit I** (Zamrawy DCOHR Inquiry and Dismissal Notice).  On January 31, 2020, the DCOHR dismissed the Intake Questionnaire for "administrative convenience" and informed Zamrawy that he "may wish to file an employment discrimination complaint with the Equal Employment Opportunity Commission" or "contact the EEOC." *Id*.

Zamrawy does not (and cannot) claim that he ever received a Right to Sue notice from the EEOC.  Moreover, *even if* the DCOHR dismissal were considered equivalent to an EEOC Right to Sue, Zamrawy waited almost three years after that dismissal before filing this lawsuit, which is

---

[3] The DCOHR has no record of Hanna filing any Charge or other document with it. *See* **Exhibit C** (Email from DCOHR FOIA Officer).

significantly outside of the 90-day filing requirement. Consequently, Zamrawy's federal discrimination claims in Counts I and III should be dismissed with prejudice because they are untimely.

> **d.** ***Gariballa's federal discrimination claim must be dismissed for failure to exhaust administrative remedies.***

Gariballa's "employment terminated with the Embassy in February 2018", and she claims to have filed a Charge with the DCOHR, not the EEOC. Cplt. p. 6, ¶ 18. DCOHR records indicate that, on "February 10, 2020," Gariballa "submitted an Employment Intake Questionnaire alleging discrimination based on national origin" with the DCOHR (not an actual charge). **Exhibit G** (Gariballa DCOHR Inquiry and Dismissal). On March 18, 2020, the DCOHR dismissed the Intake Questionnaire for "administrative convenience" and informed Gariballa that she "may wish to file an employment discrimination complaint with the Equal Employment Opportunity Commission" or "contact the EEOC." *Id*.

Even if the Intake Questionnaire was sufficient to constitute an EEOC Charge for Gariballa's federal claims, it was filed two years after her termination – well past the 300-day filing requirement. Furthermore, the Intake Questionnaire only identified "national origin" as the basis of her claim, not disability, as alleged in Count III of the Complaint. Lastly, although the DCOHR dismissed Gariballa's Intake Questionnaire on March 18, 2020, she waited nearly three years before filing this lawsuit, well outside of the 90-day filing requirement. In sum, Gariballa fails to meet the procedural requirements under the ADA, and her claim in Count III must be dismissed with prejudice.

> 2.      Gariballa has released and waived her ADA claim.

Gariballa's employment with the Embassy ended in February 2018. Cplt. p. 6, ¶ 18. On October 23, 2018, Gariballa entered into a written post-employment contract titled

"Acknowledgement of Receipt of Severance Payment and Full Release of Claims."  **Exhibit F**

(Acknowledgement of Receipt of Severance Payment and Full Release of Claims).[4]   That

document states, in its entirety:



*Id.*

By its plain language, the written contract requires dismissal of Gariballa's ADA claim.

Because her ADA claim is based on her employment (which ended ten months before she signed

---

[4] As best as can be discerned, Gariballa's breach of contract claim in Count IV is premised on the allegation that the Embassy breached this agreement with respect to her severance payment.  *See* Cplt. p. 33, ¶¶ 142-145.  Consequently, the written agreement is incorporated by reference into the Complaint and can be considered on a motion to dismiss.  *See, e.g., Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015) ("The prototypical incorporation by reference occurs where a complaint claims breach of contract, and either party attaches to its pleading an authentic copy of the contract itself . . . A pleading's reference to even a part of a fully integrated and authentic contract thus incorporates the contract as a whole into the complaint.").

this contract), her agreement to "absolutely and unconditionally release, discharge, indemnify and hold harmless the Embassy from any and all claims" in exchange for a severance payment clearly constitutes an enforceable release of her ADA claim in Count III.  *See, e.g., Mwabira-Simera v. Sodexho Marriot Mgmt. Servs.*, 2005 WL 1541041, at *2 (D.D.C. 2005), *aff'd*, 204 F. App'x 902 (D.C. Cir. 2006); *Jones v. Washington Metro. Area Transit Auth.*, 2023 WL 6621100, at *7 (D.D.C. 2023) (Walton, J.) (dismissing discrimination claim on the basis that the plaintiff entered into an agreement that "expressly states that it 'satisfies all claims' of the relevant grievances, which 'is unambiguous and constitutes a general release that should not be construed narrowly'" (quoting *Keister v. AARP Benefits Comm.*, 410 F. Supp. 3d 244, 252 (D.D.C. 2019), *aff'd*, 839 F. App'x 559 (D.C. Cir. 2021)).  Consequently, Gariballa's ADA claim in Count III should be dismissed with prejudice for this reason as well.

       3.      <u>Elkholy has failed to state a plausible claim for age discrimination.</u>

In order to state a claim for age discrimination, a plaintiff needs to plead sufficient facts to establish he was subject to an adverse action because of his age.  *See, e.g., Blackwell v. SecTek, Inc.*, 61 F. Supp. 3d 149, 161 (D.D.C. 2014).  "An adverse employment action is taken 'because of' an employee's age only if 'age was the 'but-for' cause of the challenged adverse employment action.' A mere showing that 'age was one motivating factor in [the employment] decision' is insufficient."  *Id.* (quoting *Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 180 (2009)).

As best as can be discerned, Elkholy's claim is premised on his termination on March 24, 2021 as the adverse action.  *See* Cplt. p. 17, ¶ 67.  But the allegations do not suggest that his age played a role in that termination—let alone that it was the but-for cause of his termination.

The Complaint alleges that, on February 21, 2021, Elkholy was a "witness to high-level fraud at the Embassy which he reported to Defendants."  *Id.* ¶ 66.  Elkholy asserts that the Head of the Finance Department pocketed $1,000 he received from a department clerk who was

providing the money to reimburse the Embassy for FedEx shipping charges. *Id.* Elkholy alleges that "within a month" of reporting the alleged "incident" he "received a termination letter from his manager." *Id.* ¶ 67.

The clear and unmistakable implication of these allegations is that Elkholy was terminated because he reported the alleged fraud to the Embassy. Such an allegation is entirely unrelated to Elkholy's age. Consequently, Elkholy cannot plausibly allege that his age was the "but-for" cause of his termination, and his ADEA claim in Count I should be dismissed.

**D.     Plaintiffs Elkholy, Hanna, Bashir, and Zamrawy Cannot State a Claim for Violation of the DCHRA.**

In Count II of the Complaint, Plaintiffs Elkholy, Hanna, Bashir, and Zamrawy each assert claims for age discrimination in violation of the DCHRA. The Plaintiffs' claims must all be dismissed because: (i) Defendants, as foreign sovereigns, are not covered by the statute; and (ii) even if they were covered by the statute, the Plaintiffs' claims are all untimely.

1.     <u>Defendants are not employers subject to the DCHRA.</u>

The DCHRA prohibits an "employer" from discriminating, *inter alia*, on the basis of age. D.C. Code § 2-1402.11(a)(1)(A). The DCHRA defines the term "employer" as "any person who, for compensation, employs an individual..." D.C. Code § 2-1401.02(10). "Person" is defined as:

> any individual, firm, partnership, mutual company, joint-stock company, corporation, association, organization, unincorporated organization, labor union, government agency, incorporated society, statutory or common-law trust, estate, executor, administrator, receiver, trustee, conservator, liquidator, trustee in bankruptcy, committee, assignee, officer, employee, principal or agent, legal or personal representative, real estate broker, real estate salesperson, property manager, or any agent or representative of any of the foregoing.

D.C. Code § 2-1401.02(21). Notably absent from this list are foreign sovereign governments, such as the Defendants.

When confronted with whether the U.S. federal government is subject to the DCHRA or is, instead, entitled to sovereign immunity, the courts in this District have consistently concluded that the DCHRA does not apply.  *See, e.g., Marcus v. Geithner*, 813 F. Supp. 2d 11, 17 (D.D.C. 2011); *Jordan v. Evans*, 404 F. Supp. 2d 28, 31 (D.D.C. 2005).  This is because the U.S. Supreme Court "has 'repeatedly held that the word 'person' in a statute does not include a sovereign government absent affirmative evidence of such an inclusory intent.'"  *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1307 (D.C. Cir. 2002) (quoting *Al Fayed v. CIA*, 229 F.3d 272, 274 (D.C. Cir. 2000) (citing Supreme Court cases)).

Although the Supreme Court has not ruled on whether the definition of "person" in the DCHRA encompasses foreign sovereigns, it has held that a foreign sovereign (the country of Paraguay) "is not a 'person' as that term is used in § 1983" of the Civil Rights Act of 1871.  *Bread v. Greene*, 523 U.S. 371, 378 (1998).  The U.S. Court of Appeals for the District of Columbia has similarly concluded "that a foreign government is not a 'person' within the meaning of section 1985" of the Civil Rights Act of 1871.  *Sturdza*, 281 F.3d at 1307.  *See also Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 780 (2000) (holding that the False Claims Act's definition of "person" does not include a State or State Agency); *Doe v. Fed. Democratic Rep. of Ethiopia*, 189 F. Supp. 3d 6, 12 (D.D.C. 2016) (quoting *Vt. Agency of Natural Res.* and holding that the Wiretap Act's definition of "person" does not include a foreign government due to the "longstanding interpretative presumption that 'person' does not include the sovereign").

Because the Kingdom and the Embassy are foreign sovereigns that do not meet the definition of "person" covered by the DCHRA, the Court should dismiss the DCHRA claims brought by Plaintiffs Elkholy, Hanna, Bashir, and Zamrawy.

2.      The DCHRA claims are time-barred.

Even to the extent the DCHRA applied to Defendants, all of the claims brought in Count II are subject to dismissal because they are time-barred.  The statute requires that a plaintiff bring an action in court "within one year of the unlawful discriminatory act, or the discovery thereof." D.C. Code § 2-1403.16(a).  To the extent a plaintiff files an administrative complaint with the D.C. Office of Human Rights ("DCOHR") before filing suit in court, the one-year period is tolled but only during the period of time "while the complaint is pending."  *Id.*

  *a.*  *Elkholy's DCHRA claim is untimely.*

Although Elkholy alleges that he filed a Charge of Discrimination with the EEOC (Cplt. p. 18, ¶ 68) regarding his federal claims, he <u>does not</u> (and cannot) allege that he filed an administrative complaint with DCOHR.  While ordinarily a Charge of Discrimination with the EEOC is automatically "dual-filed" with DCOHR, that is <u>not</u> the case when the employer is an embassy of a foreign nation.  *See* **Exhibit J** (Elkholy Notification & Acknowledgement of Dual-Filed Charge).  In those cases, the DCOHR "exercises its prosecutorial discretion to not accept complaints against embassies."  *Id.*  Accordingly, in Elkholy's case, the DCOHR did not accept his EEOC Charge as an administrative complaint with their office.  *See id.*  (DCOHR "Will Not File" the Charge).  As would be expected, the DCOHR has indicated in response to a Freedom of Information Act request that it has no file or records related to Elkholy.  *See* **Exhibit C** (Email from DCOHR FOIA Officer).  Because Elkholy did not file an administrative complaint with the DCOHR and because the agency did not treat his EEOC Charge as a DCOHR administrative complaint, Elkholy has no basis for tolling the DCHRA limitations period.

Elkholy was notified of his termination on March 24, 2021.  Cplt. p. 17, ¶ 67.  Since there is no basis for tolling the one-year limitations period, he was required to file any claim under the DCHRA with a court on or before March 24, 2022.  As the Complaint in this case was not filed

until February 2, 2023 — 315 days after Elkholy's limitations period expired — his claim under the DCHRA is untimely and must be dismissed with prejudice.

### b.   *Hanna's DCHRA claim is untimely.*

Hanna was notified of his termination of employment on March 24, 2021.  Cplt. p. 25, ¶ 106.  He does not (and cannot) allege that he filed an administrative complaint with the DCOHR.[5] *See* **Exhibit C** (Email from DCOHR FOIA Officer) (no records related to Hanna).  Accordingly, Hanna was required to file any claim under the DCHRA with a court on or before March 24, 2022. Since the Complaint in this case was not filed until February 2, 2023 — 315 days after his limitations period expired — his claim under the DCHRA is untimely and should be dismissed with prejudice.

### c.   *Bashir's DCHRA claim is untimely.*

Bashir was terminated on August 1, 2017.  Cplt. p. 36, ¶ 156.  Thus, absent tolling, Bashir was required to initiate any DCHRA claim on or before August 1, 2018.  The DCOHR's records indicate that Bashir filed an Intake Questionnaire (not an actual administrative complaint) on February 10, 2020.  *See* **Exhibit H** (Bashir DCOHR Inquiry and Dismissal).  Of course, at that point, even if the Intake Questionnaire was to have been deemed an administrative complaint, any claim that Bashir might have had under the DCHRA had expired for over 18 months.  Furthermore, the DCOHR quickly issued a dismissal on April 3, 2020, *see id*, and yet Bashir waited nearly <u>three</u>

---

[5] Hanna does allege that he filed a Charge of Discrimination with the EEOC on May 10, 2021. Cplt. p. 25, ¶ 109.  As noted above, that allegation is not accurate, and Hanna did not file his EEOC Charge until March 8, 2024.  *See* **Exhibit D** (Hanna EEOC Charge).  Moreover, even if it was accurate, as noted above, the DCOHR does not treat EEOC Charges of Discrimination against embassies as a dual-filed administrative complaints.  *See* **Exhibit J** (Elkholy Notification & Acknowledgement of Dual-Filed Charge).  Consequently, even if Hanna's EEOC Charge had been filed, it would not toll the DCHRA limitations.

23

<u>more years</u> following that April 2020 dismissal before filing the instant lawsuit.  In sum, Bashir's

claim under the DCHRA is not timely and, therefore, must be dismissed with prejudice.

> ### d.      *Zamrawy's DCHRA claim is untimely.*

Zamrawy was terminated on June 1, 2019.  Cplt. p. 41, ¶ 178.  On January 10, 2020,

Zamrawy submitted an Intake Questionnaire with the DCOHR, which the agency dismissed 21

days later on January 31, 2020.  *See* **Exhibit I** (Zamrawy DCOHR Inquiry and Dismissal Notice);

Cplt. p. 42, ¶ 184.  Even if the Intake Questionnaire was considered a DCOHR administrative

complaint, factoring in the 21 days that were tolled while the DCOHR matter was pending,

Zamrawy was required to file a claim in court on or before June 22, 2020 in order to pursue any

claim under the DCHRA.  Instead, Zamrawy did not file the instant Complaint until February 3,

2023 — over two years after the limitations period had expired.  Because Zamrawy's DCHRA

claim is untimely, it should be dismissed with prejudice.

## E.      **Plaintiffs Gariballa, Bashir, and Zamrawy Cannot State a Claim for Breach of** **Contract**.

> ### 1.      <u>The breach of contract claims for Gariballa, Bashir, and Zamrawy are time-barred.</u>

In Count IV, Plaintiffs allege that Defendants breached their employment contracts by

"fail[ing] to make end-of-service, and severance related payments, to the Plaintiffs, respectively,

pursuant to their contract[s]."  *See* Cplt. p. 46, ¶ 37[6].  Plaintiffs end-of-service payments were due

at the time of termination.  *See, e.g.,* Exhibit 10 to Complaint (ECF 1-13) (Bashir Contract,

Article 15); Exhibit 11 to Complaint (ECF 1-14) (Zamrawy Contract, Article 15).

Under District of Columbia law, an action for breach of contract, express or implied, must

be brought within three years from the breach of the contract.  D.C. Code § 12-301(7).  *See, e.g.,*

---

[6] Because some of the numberings are inconsistent, this refers to the second paragraph on p. 46.

*Wright v. Howard Univ.*, 60 A.3d 749, 751 (D.C. 2013) ("contract action must be brought within three years"). Consequently, in order to be timely, Plaintiffs were required to file their claims within three years from their respective termination dates.

As the chart below shows, Plaintiffs Gariballa, Bashir, and Zamrawy filed their breach of contract claims via the Complaint on February 3, 2023 – well after the three-year statute of limitations had expired.

| Plaintiff | Termination Date | Last day of 3-year Statute of Limitations | Date This Action Was Filed |
|---|---|---|---|
| Bashir | August 1, 2017 | August 3, 2020[7] | February 3, 2023 |
| Gariballa | February 28, 2018[8] | March 1, 2021[9] | February 3, 2023 |
| Zamrawy | June 1, 2019 | June 1, 2022 | February 3, 2023 |

*See* Cplt. p. 6, ¶¶ 18-20.

Because each of these Plaintiffs' claims had expired at the time of their filing of the Complaint on February 3, 2023, their breach of contract claims must be dismissed with prejudice.

2.  Gariballa's contract claim must be dismissed for the additional reason that her claim is flatly contradicted by the written agreement, and she released all claims.

Gariballa's contract claim appears to be premised on the allegation that Defendants breached the "Acknowledgement of Receipt of Severance Payment and Full Release of Claims." with respect to her severance payment. *See* Cplt. p. 33, ¶¶ 142-145; **Exhibit F** (Acknowledgement

---

[7] As the three-year deadline fell on Saturday August 1, 2020, it is extended until the next business day. *See* D.C. Super. Ct. R. Civ. P. 6(a)(1)(C).

[8] Since the Complaint does not include the specific day in February 2018 on which Gariballa's employment ended, Defendants assume, for purposes of this argument, that it this occurred on the last day in February.

[9] As the three-year deadline fell on Sunday February 28, 2021, it is extended until the next business day. *See* D.C. Super. Ct. R. Civ. P. 6(a)(1)(C).

of Receipt of Severance Payment and Full Release of Claims).  More specifically, Gariballa alleges

that the $25,385.60 severance payment she received in 2018 represents only a "partial severance

payment."  Cplt. p. 33, ¶ 144. But the contract flatly contradicts that allegation, by stating:

> I also acknowledge that this amount [$25,385.60] represents <u>full payment</u>
> of the severance pay and that no part of it has been withheld by the Embassy
> for Federal, State, or Local tax purposes.  I further agree that this amount
> represents a <u>final payment</u> by the Embassy and that I <u>do not claim, nor does
> the Embassy owe me additional compensation</u>.

**Exhibit F** (Acknowledgement of Receipt of Severance Payment and Full Release of Claims)

(emphasis added).

A plaintiff fails to state a plausible breach of contract claim when the written contract flatly

contradicts the allegation in the complaint.  *See, e.g., Davis v. World Sav. Bank, FSB*, 806

F.Supp.2d 159, 172–73 (D.D.C. 2011).  Because the written contract explicitly states that the

payment Gariballa received on October 23. 2018 was the full and final payment and not a partial

payment, Gariballa's breach of contract must be dismissed with prejudice for this reason as well.

Additionally, Gariballa's breach of contract claim is foreclosed by the fact that, in the

written contract, she "absolutely and unconditionally release[d], discharge[d], indemnify[ied] and

h[eld] harmless the Embassy from any and all claims." *See, e.g., Keister v. AARP Benefits Comm.*,

410 F. Supp. 3d 244, 253 (D.D.C. 2019), *aff'd*, 839 F. App'x 559 (D.C. Cir. 2021) ("any and all

claims" language is a general release that "preclude[s] all future litigation of claims… *without*

having to identify each and every claim that might exist") (emphasis in original).

## F.   To the Extent Any Claim Survives Dismissal, Plaintiffs' Request for Punitive Damages Must be Dismissed.

As discussed above, Plaintiffs' claims are all subject to dismissal.  However, to the extent

the Court allows any claim to move forward, the FSIA prohibits Plaintiffs from seeking punitive

damages against Defendants.  Specifically, Section 1606 of the FSIA provides, "as to any claim

for relief with respect to which a foreign state is not entitled to immunity…, the foreign state…

*shall not be liable for punitive damages*."  28 U.S.C. § 1606 (emphasis added).  *See also Gibbons*

*v. Republic of Ireland*, 532 F. Supp. 668, 671 (D.D.C. 1982) ("a foreign state cannot be held liable

for punitive damages").  Consequently, to the extent the Court does not dismiss any of Plaintiffs'

claims against Defendants, it must strike the punitive damages demand.

## V.    CONCLUSION

In summary, each of the claims asserted in the Complaint should be dismissed because, not

only are Defendants are immune under the FSIA, but, as shown above, Plaintiffs' claims are fatally

flawed for the following reasons:

| | Count I (ADEA) | Count II (DCHRA) | Count III (ADA) | Count IV (Breach of Contract) |
|---|---|---|---|---|
| **Elkholy** | • Forum Non Conveniens; <br>• Failed to state plausible claim. | • Forum Non Conveniens; <br>• Defendants are not employers; <br>• Time-barred. | Not asserted. | • Forum Non Conveniens. |
| **Hanna** | • Forum Non Conveniens; <br>• Failed to exhaust administrative remedies. | • Forum Non Conveniens; <br>• Defendants are not employers; <br>• Time-barred. | Not asserted. | • Forum Non Conveniens. |
| **Gariballa** | Not asserted. | Not asserted. | • Failed to exhaust administrative remedies; <br>• Released and waived claim. | • Time-barred; <br>• Released and waived claim. |

|  | Count I (ADEA) | Count II (DCHRA) | Count III (ADA) | Count IV (Breach of Contract) |
|---|---|---|---|---|
| **Bashir** | • Forum Non Conveniens; <br>• Failed to exhaust administrative remedies. | • Forum Non Conveniens; <br>• Defendants are not employers; <br>• Time-barred. | • Forum Non Conveniens; <br>• Failed to exhaust administrative remedies. | • Forum Non Conveniens; <br>• Time-barred. |
| **Zamrawy** | • Forum Non Conveniens; <br>• Failed to exhaust administrative remedies. | • Forum Non Conveniens; <br>• Defendants are not employers; <br>• Time-barred. | • Forum Non Conveniens; <br>• Failed to exhaust administrative remedies. | • Forum Non Conveniens; <br>• Time-barred. |

As demonstrated thoroughly above, none of the Plaintiffs' claims are able to survive dismissal under Rule 12(b)(1) or Rule 12(b)(6).  Moreover, the fatal flaws inherent in each of the claims asserted in the Complaint are not susceptible to remedy by amendment, and therefore any attempt to amend the Complaint to address these deficiencies would be futile.  For this reason, Defendants respectfully request that this Hon. Court dismiss the Complaint in its entirety, with prejudice and without leave to amend.

Dated: August 2, 2024      Respectfully submitted,

            /s/ Edward Lee Isler
           Edward Lee Isler, DC Bar No. 417076
           Lori H. Turner, DC Bar No. 495530
           Micah E. Ticatch, DC Bar No 1005398
           ISLER DARE, P.C.
           1945 Old Gallows Road, Suite 650
           Vienna, Virginia 22182
           (703) 748-2690
           (703) 748-2695 (fax)
           eisler@islerdare.com
           lturner@islerdare.com
           mticatch@islerdare.com

*Attorneys Appearing Specially for Defendants*
*The Royal Embassy of the Kingdom of Saudi*
*Arabia and The Kingdom of Saudi Arabia*

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of August 2024, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

> Sylvia J. Rolinski, Esq.
> Rolinski Law Group, LLC
> 14915 River Road
> Potomac, MD 20854
> T: (301) 987-0202 (ext. 1)
> F: (301) 263-7100
> SJR@Rolinski.com
> *Attorney for Plaintiffs*

>     /s/ Edward Lee Isler
> Edward Lee Isler, DC Bar No. 417076
> ISLER DARE, P.C.
> 1945 Old Gallows Road, Suite 650
> Vienna, Virginia 22182
> (703) 748-2690
> (703) 748-2695 (fax)
> eisler@islerdare.com
> *Attorney Appearing Specially for Defendants*
> *The Royal Embassy of the Kingdom of Saudi Arabia*
> *and The Kingdom of Saudi Arabia*