**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TAREK ELKHOLY, *et al.*,** ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| v. ) | **Civil Action No.: 1:23-cv-00306-RBW** |
| ) | |
| **THE ROYAL EMBASSY OF THE** ) | |
| **KINGDOM OF SAUDI ARABIA, *et al.*,** ) | |
| ) | |
| *Defendants*. ) | |
| —————————————————— ) | |

**REPLY BRIEF IN FURTHER SUPPORT OF**
**DEFENDANTS' (APPEARING SPECIALLY)**
**MOTION TO DISMISS AND MOTION TO STRIKE**

Edward Lee Isler, D.C. Bar No. 417076
Lori H. Turner, D.C. Bar No. 495530
Micah E. Ticatch, D.C. Bar No. 1005398
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
eisler@islerdare.com
lturner@islerdare.com
mticatch@islerdare.com
*Attorneys Appearing Specially for Defendants*
*The Royal Embassy of the Kingdom of Saudi Arabia*
*And The Kingdom of Saudi Arabia*

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ................................................................................................... 1

    A.    Plaintiffs Have Not Sufficiently Pled Facts to Establish an Exemption to the FSIA. ................................................................................................ 1

        1.    The Court Can Take Judicial Notice of Information on the Kingdom's Website. ................................................................................ 2

        2.    Plaintiffs Were Civil Servants, such that the Commercial Activity Exception to the FSIA Does Not Apply. ....................................... 3

    B.    Plaintiffs' Discrimination Claims under the ADEA, ADA, and DCHRA Are Fatally Flawed. ................................................................................ 4

        1.    Elkholy's DCHRA Claim is Time-Barred. ................................... 4

        2.    Hanna's ADEA and DCHRA Claims Are Untimely. ................... 5

        3.    Gariballa's ADA Claim Is Not Viable Because It is Untimely, and She Failed to Allege Disability Discrimination. ......................... 6

        4.    Bashir's ADEA, ADA, and DCHRA Claims Are Not Viable Because They Are Untimely, and He Failed to Allege Age and Disability Discrimination. ................................................................ 7

        5.    Zamrawy's ADEA, ADA, and DCHRA Claims Are Time-Barred. ........... 7

        6.    Equitable Tolling Cannot Resuscitate Plaintiffs' Untimely Discrimination Claims. ................................................................ 8

        7.    Gariballa and Bashir Failed to Exhaust Administrative Remedies by Alleging Discrimination on the Basis of Age and/or Disability, and These Claims Do Not Grow Out of their Intake Questionnaires. ............. 12

    C.    The Embassy and The Kingdom Are Not "Employers" under the DCHRA, and Plaintiffs Failed to Oppose This. ................................................ 13

    D.    Gariballa Has Released Her ADA and Breach of Contract Claims. .................... 13

    E.    The Breach of Contract Claims Brought by Gariballa, Bashir, and Zamrawy Are Time-Barred, and Equitable Tolling/Estoppel Is Not Warranted. ................. 15

    F.    Elkholy Fails to Demonstrate that Age Was the "But-For" Cause of His Termination. ............................................................................... 16

G.      All claims brought by Elkholy, Hanna, Bashir, and Zamrawy should be
        dismissed on the grounds of *forum non conveniens*. ........................................... 18

H.      Plaintiffs' Demand for Punitive Damages Must Be Stricken Pursuant to the
        FSIA. ...................................................................................................................... 20

III. <u>CONCLUSION</u> ............................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Adetoro v. King Abdullah Academy*,
    585 F. Supp. 3d 78 (D.D.C. 2020) .................................................................... 13, 17

*Azima v. RAK Inv. Auth.*,
    926 F.3d 870 (D.C. Cir. 2019) ............................................................................... 20

*Barot v. Embassy of Republic of Zambia*,
    11 F. Supp. 3d 24 (D.D.C. 2014) ............................................................................ 21

*Barot v. Embassy of the Republic of Zambia*,
    299 F. Supp. 3d 160 (D.D.C. 2018) ........................................................................ 17

*Beer v. Islamic Republic of Iran*,
    789 F. Supp. 2d 14 (D.D.C. 2011) .................................................................... 20, 21

*Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*,
    734 F.3d 1175 (D.C. Cir. 2013) ................................................................................ 3

*Brookens v. Acosta*,
    297 F. Supp. 3d 40 (D.D.C. 2018) .......................................................................... 10

*Cannon v. District of Columbia*,
    717 F.3d 200 (D.C. Cir. 2013) .................................................................................. 2

*Chung v. U.S. Dept. of Justice*,
    333 F.3d 273 (D.C. Cir. 2003) ................................................................................ 16

*Compania de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*,
    970 F.3d 1269 (10th Cir. 2020) ................................................................................ 3

*Cristwell v. Veneman*,
    224 F. Supp.  (D.D.C. 2002) ............................................................ 9, 10, 11, 15

*D&S Consulting, Inc. v. Kingdom of Saudi Arabia*,
    961 F.3d 1209 (D.C. Cir. 2020) ........................................................................ 18, 20

*Dahman v. Embassy of the State of Qatar*,
    815 F. App'x 554 (D.C. Cir. 2020) .......................................................................... 19

*De Sousa v. Embassy of Republic of Angola*,
    229 F. Supp. 3d 23 (D.D.C. 2017) .......................................................................... 22

*Dougherty v. Barry*,
    869 F.2d 605 (D.C. Cir. 1989) ................................................................................ 10

*Dowley v. Dewey Ballentine, LLP*,
  2006 WL 1102768 (D.D.C. 2006) ........................................................... 18

*Duma v. Unum Provident*,
  770 F. Supp. 2d 308 (D.D.C. 2011) ........................................................ 14

*El-Hadad v. United Arab Emirates*,
  216 F.3d 29 (D.C. Cir. 2000) ................................................................... 3

*El-Hadad v. United Arab Emirates*,
  496 F.3d 658 (D.C. Cir. 2007) ............................................................. 3, 4

*Embassy of Fed. Republic of Nigeria v. Ugwuonye*,
  901 F. Supp. 2d 136 (D.D.C. 2012) ....................................................... 22

*Fort Bend Cnty., Texas v. Davis*,
  587 U.S. 541 (2019) .................................................................................. 5

*Gross v. FBL Fin. Servs., Inc.*,
  557 U.S. 167 (2009) ................................................................................ 16

*Haynes v. District of Columbia*,
  924 F.3d 519 (D.C. Cir. 2019) ......................................................... 10, 13

*Hopkins v. Women's Div., Gen. Bd. of Global Ministries*,
  284 F. Supp. 2d 15 (D.D.C. 2003) ................................................... 13, 16

*Howe v. Embassy of Italy*,
  68 F. Supp. 3d 26 (D.D.C. 2014) ........................................................... 22

*Imperial Valet, Inc. v. Woodard*,
  2015 WL 13158506 (D.D.C. 2015) ........................................................ 18

*In re Ex Parte Application of Jommi*,
  2013 WL 6058201 n.1 (N.D. Cal. 2013) .................................................. 3

*Irwin v. Dept't of Veterans Affairs*,
  489 U.S. 89 (1990) .................................................................................... 9

*Lee v. Taipei Econ. and Cultural Representative Office*,
  2010 WL 2710661 (S.D. Tex. 2010) ...................................................... 21

*Miller v. Downtown Bid Servs. Corp.*,
  281 F. Supp. 3d 15 (D.D.C. 2017) ......................................................... 11

*Nat'l R.R. Passenger Corp. v. Boston and Marine Corp.*,
  850 F.2d 756 (D.C. Cir. 1988) ............................................................... 18

*Pharm. Research Mfrs. Of Am. v. U.S. Dep't of Health and Human Servs.*,
  43 F. Supp. 3d 28 (D.D.C. 2014) ........................................................................ 2

*Rimkus v. Islamic Republic of Iran*,
  750 F. Supp. 2d 163 (D.D.C. 2010) .................................................................. 21

*Samirah v. District Smiles, PLLC*,
  2021 WL 918082 (D.D.C. 2021) ........................................................................ 19

*Saudi Arabia v. Nelson*,
  507 U.S. 349 (1993) .............................................................................................. 3

*Schmidt v. Shah*,
  696 F. Supp. 2d 44 (D.D.C. 2010) .................................................................... 15

*Smith-Haynie v. District of Columbia*,
  155 F.3d 575 (D.C. Cir. 1998) ............................................................................ 9

*Sununu v. Philippine Airlines, Inc.*,
  792 F. Supp. 2d 39 (D.D.C. 2011) ............................................................... 14, 15

*Transaero, Inc. v. La Fuerza Aerea*,
  30 F.3d 148 (D.C. Cir. 1994) ............................................................................ 22

*U.S. v. All Assets Held in Account Number XXXXXXXX*,
  2014 WL 12810522 n3 (D.D.C. 2014) ................................................................ 2

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*,
  363 U.S. 574 (1960) ............................................................................................ 18

*Valore v. Islamic Republic of Iran*,
  700 F. Supp. 2d 52 (D.D.C. 2010) .................................................................... 16

*Wannall v. Honeywell, Inc.*,
  775 F.3d 425 (D.C. Cir. 2014) .................................................................. *passim*

*Washington v. Washington Metro. Area Transit Auth.*,
  160 F.3d 750 (D.C. Cir. 1998) ........................................................................ 9, 15

*Weaver v. Bratt*,
  421 F. Supp. 2d 25 (D.D.C. 2006) .................................................................... 14

*Wright v. Foreign Serv. Grievance Bd.*,
  503 F. Supp. 2d 163 (D.D.C. 2007) .................................................................. 14

**Statutes**

28 U.S.C. § 1603 ................................................................................................................. 22

28 U.S.C. § 1605 .................................................................................................... 17, 20, 21

28 U.S.C. § 1605A ................................................................................................. 17, 20, 21

28 U.S.C. § 1606 ................................................................................................................. 21

D.C. Code Section 2-1403.16 ........................................................................................ 4, 10

## I.  **INTRODUCTION**

Defendants, the Royal Embassy of the Kingdom of Saudi Arabia ("Embassy") and the Kingdom of Saudia Arabia ("Kingdom"), appearing specially, submit this Reply in further support of their Motion to Dismiss Plaintiffs' Complaint and to Strike and the supporting Memorandum of Points and Authorities ("Motion to Dismiss") (ECF 29).  For the reasons set forth in the Motion to Dismiss, the Court should grant The Embassy's Motion because:

(1)   Plaintiffs have not sufficiently pled facts to establish an exemption to the Foreign Sovereign Immunities Act ("FSIA");

(2)   Plaintiffs' Discrimination Claims under the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), and the District of Columbia Human Rights Act ("DCHRA") are fatally flawed;

(3)   The Embassy and the Kingdom are not "employers" under the DCHRA, and Plaintiffs have failed to oppose this;

(4)   Gariballa has released her ADA and breach of contract claims;

(5)   The breach of  contract claims brought by Gariballa, Bashir, and Zamrawy are time-barred, and equitable tolling/estoppel is not warranted;

(6)   Elkholy fails to demonstrate that age was the "but-for cause" of his termination;

(7)   All claims brought by Elkholy, Hanna, Bashir, and Zamrawy should be dismissed on the grounds of *forum non conveniens*; and

(8)   Plaintiffs' demand for punitive damages must be stricken pursuant to the FSIA.

## II.  **ARGUMENT**

**A.    Plaintiffs Have Not Sufficiently Pled Facts to Establish an Exemption to the FSIA.**

Plaintiffs acknowledge that the "FSIA is the only method for piercing sovereign immunity and bringing a suit against a foreign state."  Opposition ("Opp.") at 10.  However, Plaintiffs argue that the commercial activities exception to the FSIA applies because: (i) the Court should refuse to take judicial notice of the *Implementing Regulation for Human Resources in the Civil Service*

1

because it is on the Kingdom's website, not a U.S. government website;[1] and (ii) the Plaintiffs were not civil servants or performing conduct involving distinctly governmental powers.  As explained below, these arguments are unavailing.

       1.     <u>The Court Can Take Judicial Notice of Information on the Kingdom's Website.</u>

Federal Rule of Evidence 201(b)(2) provides that a "court may judicially notice a fact that is not subject to reasonable dispute because it… can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Plaintiffs acknowledge that "[t]his Court held that it regularly takes judicial notice of 'information posted on official public websites'".  *Id.* (quoting *Pharm. Research Mfrs. Of Am. v. U.S. Dep't of Health and Human Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014)).  However, Plaintiffs suggest to the Court that judicial notice is only available with respect to information posted on "official public websites of **[U.S.]** government agencies", not official public websites of other governments, such as the Kingdom. Opp. at 12 (emphasis added).  Plaintiffs' insertion of "U.S." into this quote is misleading, as the Court in *Pharm. Research and Mfrs. of America* did not include "U.S." in its holding and did not suggest that the holding was limited to U.S. federal government agencies only.

In fact, the court in *Pharm. Research and Mfrs. of America* cited to a D.C. Circuit Court of Appeals Case decision, *Cannon v. District of Columbia*, 717 F.3d 200 (D.C. Cir. 2013), "taking judicial notice of [a] document posted on the District of Columbia's Retirement Board website", not a U.S. federal government website.  43 F. Supp. 3d at 33.  Contrary to Plaintiffs' assertion, courts have routinely taken judicial notice of information on foreign government and foreign entity websites.  *See*, *e.g.*, *U.S. v. All Assets Held in Account Number XXXXXXXX*, 2014 WL 12810522, at *3 n3 (D.D.C. 2014) (taking judicial notice of information on the "Nigerian Federal Ministry of

---

[1]  Available at the following web address: [https://www.hrsd.gov.sa/sites/default/files/2023-04/Implementing%20Regulation%20for%20Human.pdf](https://www.hrsd.gov.sa/sites/default/files/2023-04/Implementing%20Regulation%20for%20Human.pdf).

Justice website"); *Compania de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1293 n.4 (10th Cir. 2020) (taking judicial notice of documents posted on the Hague Conference website); *In re Ex Parte Application of Jommi*, 2013 WL 6058201, at *2 n.1 (N.D. Cal. 2013) ("court may take judicial notice of public records of governmental entities and authoritative sources of foreign law, including information posted on government websites"). Accordingly, the Court should take judicial notice of the *Implementing Regulation for Human Resources in the Civil Service* found on the Kingdom's website.

      2.     <u>Plaintiffs Were Civil Servants, such that the Commercial Activity Exception to the FSIA Does Not Apply.</u>

"[T]he FSIA begins with a presumption of immunity, which the plaintiff bears the initial burden to overcome." *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1183 (D.C. Cir. 2013). Although there is an exception to the FSIA that allows a foreign state to be sued if the foreign state engaged in commercial activity, "employment of personnel by a foreign state is not per se commercial activity under the FSIA." *El-Hadad v. United Arab Emirates*, 216 F.3d 29, 31 (D.C. Cir. 2000). Rather, if the plaintiff "is a civil servant, [the court's] analysis stops for [it has] determined that the [defendant] is immune from [] suit." *El-Hadad v. United Arab Emirates*, 496 F.3d 658, 664 (D.C. Cir. 2007)). If the plaintiff "is not a civil servant, [the court] go[es] on to scrutinize whether [the plaintiff's] work involves the exercise of 'powers that can also be exercised by private citizens, as distinct from those powers peculiar to sovereigns.'" *Id*. (quoting *Saudi Arabia v. Nelson*, 507 U.S. 349, 360 (1993)). As explained below, Plaintiffs were civil servants and, thus, the inquiry must stop and the FSIA's immunity applies to Defendants.

In the *Implementing Regulation for Human Resources in the Civil Service*, the Kingdom defines a civil service employee broadly as "any person holding a public civil job in the state or its functions whatever the nature of his work or his job title, whether by appointment or contracting,

3

permanently or temporarily." The term "job" includes those performed by employees of "civil missions", such as the Embassy. Plaintiffs, who were employed by the Embassy as an Accounting Clerk (Elkholy), a Consulate Processing Agent (Hanna), an Accounting/Personnel Manager (Gariballa), an Administrator in the training section of the Air Force (Bashir), and a Driver (Zamrawy), each held a public civil mission job for the Embassy and, therefore, meet the definition of civil servant employee under Saudi Arabian law. Compl.. ¶ 33, ¶ 81, ¶ 118, ¶ 151, ¶ 165.

Plaintiffs suggest that the Court overlook the fact that Plaintiffs' jobs fall within the definition of civil servant under the _Implementing Regulation for Human Resources in the Civil Service_ and consider other factors, such as the Plaintiffs not being citizens of Saudi Arabia, "the Cultural Division's work is commercial in nature",[2] and their claims are "based upon their employment relationship with the Defendants." Opp. 14. However, these factors are not relevant. Moreover, unlike the facts in _El-Hadad_, where the district court found that "the U.A.E. does not have a definition of 'civil servant'", the Kingdom clearly does have such a definition, and this definition encompasses Plaintiffs' positions for the Embassy. 496 F.3d at 665.

**B.      Plaintiffs' ADEA, ADA, and DCHRA Discrimination Claims Are Fatally Flawed.**

1.      Elkholy's DCHRA Claim is Time-Barred.

The DCHRA requires that a plaintiff file his lawsuit "within one year of the unlawful discriminatory act, or the discovery thereof." D.C. Code § 2-143.16(a). Elkholy received a termination letter on March 24, 2021 but did not file the instant lawsuit until February 3, 2023 – over one year and ten months later. Accordingly, Elkholy's DCHRA claim is time-barred. Elkholy fails to address this in the Opposition, other than to state ""Not Applicable. Filing was timely." To the extent that Plaintiff is relying on case law that holds that "a complainant _ordinarily_ need

---

[2] Neither Defendant in this case is a "Cultural Division".

not file separately with federal and state agencies," that reliance is misplaced.  *Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 544 (2019) (emphasis added).  As previously noted, this is not an ordinary matter.  In this case, DCOHR notified Elkholy that it "exercise[ed] its prosecutorial discretion to not accept complaints against embassies" and did not accept Elkholy's EEOC Charge as an administrative complaint with their office.  *See* ECF 29-10.  Elkholy could have filed an administrative complaint with DCOHR after receiving that notice, but chose not do so.  As discussed in Section IV(D)(2) of the Motion to Dismiss, consistent with their notice to Elkholy, the DCOHR has no record of Elkholy filing any Charge with it so as to provide a basis for tolling.  *See* ECF 29-3 (DCOHR FOIA Decision).

Elkholy makes no argument for how, given DCOHR's explicit notice that the EEOC Charge was not accepted by DCOHR, he could assert that he timely filed, and as such the matter should be treated as conceded.  *See Wannall v. Honeywell, Inc*., 775 F.3d 425, 428 (D.C. Cir. 2014) ("if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded").

2.    Hanna's ADEA and DCHRA Claims Are Untimely.

In the Opposition, Hanna asserts that he filed a Charge of Discrimination with the EEOC in May 2021. In support of this assertion, Hanna fails to provide an actual Charge but, instead, merely provides a screenshot of a telephone interview scheduled with the EEOC.  *See* ECF 31-2. Setting aside the fact that he presents no evidence he actually participated in the interview, the EEOC website makes clear that such a telephonic interview does <u>not</u> constitute a charge:

**By Telephone**

Although we do not take charges over the phone, you can get the process started over the phone.  You can call 1-800-669-4000 to discuss your situation.  A representative will ask you for some basic information to determine if your situation is covered by the laws we enforce and explain how to file a charge.

Https://www.eeoc.gov/how-file-charge-employment-discrimination.    Indeed, the text of the

message to Hanna states that he is scheduled for a phone interview "regarding [his] inquiry" and that, prior to the interview, he should "provide additional information about [his] inquiry." *Id*. Following the intake interview, the EEOC requires that the Charge be reduced to a writing:

> A charge shall be in writing and shall name the prospective respondent and shall generally allege the discriminatory act(s). Charges received in person or by telephone shall be reduced to writing.

29 C.F.R. 1626.6.

Here, there is no evidence of Hanna having filed an actual Charge in 2021; rather, the only evidence that Hanna filed an EEOC Charge is ECF 29-4, which is dated March 8, 2024. In the Opposition, Plaintiff's counsel misleadingly implies that the Notice of Right to Sue that Hanna received in March 2024 was in response to his alleged 2021 Charge filing. Opp., p. 7 (asserting that no response to his alleged 2021 filing "was received until the EEOC issued a notice of right March 8, 2024"). In fact, the EEOC Charge Number on that Notice – 570-<u>2024</u>-02032 – reflects a 2024 filing date and matches the Charge number on the Charge that he filed that same day. Because Hanna was notified of his termination on March 24, 2021, his EEOC filing on March 8, 2024 was clearly untimely. *See* ECF 29-5 (Hanna Notice of Right to Sue); Compl.. p. 6, ¶ 17.

Hanna's DCHRA claim similarly fails due to its untimeliness. Hanna received a termination letter on March 24, 2021 but did not file suit until February 2, 2023 – more than ten months after it was required to be filed under Section 2-143.16(a) of the DCHRA.

      3.    <u>Gariballa's ADA Claim Is Not Viable Because It is Untimely, and She Failed to Allege Disability Discrimination.</u>

Gariballa never filed a Charge of Discrimination with the EEOC, and even if her DCOHR Intake Questionnaire (ECF 29-7) was deemed an EEOC Charge (which Defendants contest), she did not file it until February 10, 2020, two years after her termination of employment in February 2018. *See* Compl.. p. 33, ¶ 141. Because Gariballa did not file any Charge within 300 days of her

termination, as required by the ADA, her lawsuit is time-barred.  Gariballa's ADA claim also fails because, even after she received notice from the DCOHR of its dismissal of the Intake Questionnaire on March 18, 2020, she did not file suit within 90 days of its receipt.  Additionally, Gariballa's claim fails because, as explained is Section II(B)(7) below, she only asserted discrimination on the basis of national origin, not disability, in her DCOHR Intake Questionnaire.

4.  <u>Bashir's ADEA, ADA, and DCHRA Claims Are Not Viable Because They Are Untimely, and He Failed to Allege Age and Disability Discrimination.</u>

Bashir never filed a Charge of Discrimination with the EEOC, and even if his Intake Questionnaire (ECF 29-8) was deemed an EEOC Charge (which Defendants contest), he did not file it until February 24, 2020 – 937 days after his termination on August 1, 2017.  *See* Compl.. ¶ 149.  Because Bashir did not file any Charge within 300 days of his termination, as required by the ADEA and ADA, these claims are time-barred.  Bashir's ADEA and ADA claims fail for the additional reason that, even after he received notice from the DCOHR of its dismissal of the Intake Questionnaire on April 3, 2020, he did not file suit within 90 days of its receipt.  Bashir's DCHRA claim fails because he did not file the instant lawsuit within one year of his termination on August 1, 2017, waiting five and a half years before filing suit.  *See* Compl.. p. 34, ¶ 149. Lastly, Bashir's ADEA, ADA, and DCOHR claims fail because, as explained is Section II(B)(7) below, he only asserted differential treatment based on non-Saudi national origin, not age or disability, in his DCOHR Intake Questionnaire.  *See* ECF 29-8.

5.  <u>Zamrawy's ADEA, ADA, and DCHRA Claims Are Time-Barred.</u>

Zamrawy never filed an EEOC Charge and only filed an Intake Questionnaire with the DCOHR, which was dismissed by the DCOHR on January 31, 2020.  *See* ECF 29-9.  Even if the Intake Questionnaire was deemed an EEOC Charge (which Defendants contest), Zamrawy waited 1099 days after receiving its dismissal before filing suit – well outside the 90 day requirement

under the ADEA and ADA.  Zamrawy's DCHRA claim is similarly untimely because he did not file suit within one year of his termination on June 1, 2019.  *See* Compl.. p. 41, ¶ 178.

> 6. <u>Equitable Tolling Cannot Resuscitate Plaintiffs' Untimely Discrimination Claims.</u>

In the Opposition, Plaintiffs argue that the Court should overlook the fact that they filed their Charges "beyond the articulated 300-day window" on the grounds of equitable tolling.[3] Opp. 16-17.  Plaintiffs do not address Defendants' other arguments related to untimeliness, including those set forth below, and only address their untimeliness as to the 300-day Charge filing requirement.

- *Elkholy* – did not file his DCHRA lawsuit within one year of being notified of his termination.

- *Hanna* – did not file his DCHRA lawsuit within one year of being notified of his termination.

- *Gariballa* – did not file an EEOC Charge and did not file her ADA claim within 90 days of receipt of the DCOHR dismissal.

- *Bashir* – did not file an EEOC Charge; did not file his ADEA or ADA claim within 90 days of receipt of the DCOHR dismissal; and did not file his DCHRA lawsuit within one year of his termination.

- *Zamrawy* – did not file an EEOC Charge; did not file his ADEA or ADA claim within 90 days of receipt of the DCOHR dismissal; and did not file his DCHRA lawsuit within one year of his termination.

Because Plaintiffs "addresse[d] only some of [Defendants'] arguments, the court may treat the unaddressed arguments as conceded." *Wannall*, 775 F.3d at 428.  Thus, the Court should dismiss, with prejudice, the following claims on the grounds that they are time-barred: (i) Elkholy's DCHRA claim; (ii) Hanna's DCHRA claim; (iii) Gariballa's ADA claim; (iv) Bashir's ADEA, ADA, and DCHRA claims; and (v) Zamrawy's ADEA, ADA, and DCHRA claims.

---

[3] Elkholy does not assert any grounds for equitable tolling and, instead, suggests that his claims were timely filed, which is inaccurate with respect to his DCHRA claim.  Accordingly, he has conceded this argument.

The Court should decline Plaintiffs' invitation to equitably toll the 300-day filing limitations period (and any other filing period).  As the Plaintiffs acknowledge, the D.C. Circuit Court has held that a court's "equitable power to toll the statute of limitations" must be exercised "only in extraordinary and carefully circumscribed instances." *Washington v. Wash. Metro. Area Transit Auth.*, 160 F.3d 750, 753 (D.C. Cir. 1998) (quoting *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 579-80 (D.C. Cir. 1998)).  Courts "have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass", but courts "have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." *Irwin v. Dept't of Veterans Affairs*, 489 U.S. 89, 96 (1990).  Equitable tolling "does not extend" to "garden variety claim[s] of excusable neglect." *Id.*

Hanna, Gariballa, Bashir, and Zamrawy argue that equitable tolling is appropriate because Defendants allegedly "engage[d] in protracted negotiation, promises of additional compensation as to final end of service and severance compensation until Defendants ultimately abandoned those negotiations and promises, breached their contract."  Opp., p. 16.  However, this Court has flatly rejected such an argument.  In *Cristwell v. Veneman*, 224 F. Supp. 54 (D.D.C. 2002) (Walton, J.), the Court denied the plaintiff's request to equitably toll his race and age discrimination claims on the grounds that the parties were engaged in settlement negotiations, and granted the defendant's motion to dismiss.  In doing so, the Court reasoned:

> Settlement is the lifeline of the civil justice system. Without it, the entire system would collapse from the weight of unresolved cases. Accordingly, settlement negotiations are an essential component of the settlement process. To excuse filing obligations on equitable grounds solely because parties were engaged in settlement discussions would virtually eviscerate filing time requirements and throw the orderly and expeditious processing of Title VII cases into even further disarray.

Something more than mere participation in settlement negotiations must be demonstrated.

*Id*. at 61.

Hanna, Gariballa, Bashir, and Zamrawy also claim that although their EEOC Charges and DCOHR Charges should be deemed cross-filed with the other agency respectively, equitable tolling should also be applied because they were confused by the process.  For example, Hanna contends that the "[s]hared filing between EEOC and DCOHR led [him] to believe no further action as necessary to file with DCOHR", *see* Opp. 16, but he does not explain why he did not file his DCHRA lawsuit within the one-year time period required by D.C. Code Section 2-1403.16(a).

Similarly, Gariballa, Bashir, and Zamrawy assert that they were confused by the DCOHR's dismissal letter, which stated that the DCOHR was "dismiss[ing] this complaint for administrative convenience" and that they "may" wish to take action.  Opp. 16.  However, courts have consistently rejected arguments of confusion about filing deadlines, even when the plaintiff asserted mental incapacity.  *See Dougherty v. Barry*, 869 F.2d 605, 613 (D.C. Cir. 1989) (denying equitable tolling and holding that even if the plaintiffs "believed that pending administrative remedies relating to their [DC]OHR complaint precluded suit on the EEOC Charge", they "unjustifiably failed to bring suit within ninety days of dismissal of the OHR complaint"); *Haynes v. District of Columbia*, 924 F.3d 519, 526 (D.C. Cir. 2019) (rejecting the plaintiff's assertion that his learning disability rendered him incapable of understanding the 90-day time period to file suit after receiving the EEOC's dismissal and reasoning that the fact that the plaintiff "was able to contact the EEOC, receive counseling about his legal rights, file a charge of discrimination, file a federal lawsuit, and eventually retain counsel" rendered equitable tolling inappropriate); *Brookens v. Acosta*, 297 F. Supp. 3d 40, 50 (D.D.C. 2018) (dismissing the plaintiff's discrimination claims and holding that "misapprehension of the law is facially insufficient to toll the statute of limitations").

Hanna, Gariballa, Bashir, and Zamrawy additionally argue that their discrimination claims should be equitably tolled because they were "precluded from filing their claims earlier due to the COVID-19 pandemic filing restrictions, court closures, and access to administrative bodies." Opp., pp. 6, 16. This argument is so factually flawed as to be specious. As initial point, the EEOC, the DCOHR, and the Court all offer electronic means of filing.[4] Additionally, Gariballa (February 2018), Bashir (August 2017), and Zamrawy (June 2019) were terminated from employment well before the COVID-19 pandemic began in March 2020. Indeed, they each filed DCOHR Intake Questionnaires and received dismissals from the DCOHR in early 2020. *See* Compl.. ¶¶ 18-20. *See also* ECF 29-7 (Gariballa DCOHR Intake and Dismissal); ECF 29-8 (Bashir DCOHR Intake and Dismissal); and ECF 29-9 (Zamrawy DCOHR Intake and Dismissal). In support of this argument, they somewhat confusingly attach the EEOC's *Processing Information for All Parties in Federal EEO Processing under 29 CFR Part 1614, see* ECF 31-3, which only applies to federal employee EEO Processing, not non-federal employee matters. Further, it states that the "EEOC expects that agencies and employees [] continue to process EEO complaints in a timely manner". Accordingly, this argument has no factual or legal basis.

Lastly, the suggestion by Hanna, Gariballa, Bashir, and Zamrawy that "no counsel could be found or retained during COVID" is meritless and cannot revive their untimely claims. As this Court has opined, a plaintiff's "inability to retain an attorney is not an extraordinary circumstance" so as to justify equitable tolling, "as she could have filed th[e] action *pro se*". *Miller v. Downtown Bid Servs. Corp.*, 281 F. Supp. 3d 15, 22 (D.D.C. 2017) (Walton, J.). *See also Cristwell*, 224 F. Supp. 2d at 61 (Walton, J.) (refusing to grant equitable tolling on the ground that "even *pro se*

---

[4]   *See*   https://www.eeoc.gov/eeoc-public-portal,   https://ohr.dc.gov/service/file-discrimination-complaint, and https://www.dcd.uscourts.gov/pro-se-help/electronic-noticing.

plaintiffs must act diligently when pursuing their claims").  Moreover, by no later than June 2021, Gariballa, Bashir, and Zamrawy had retained their current counsel.

For the foregoing reasons, the Court should decline to equitably toll Plaintiffs' discrimination claims and dismiss them with prejudice.

       7.    <u>Gariballa and Bashir Failed to Exhaust Administrative Remedies by Alleging Discrimination on the Basis of Age and/or Disability, and These Claims Do Not Grow Out of their Intake Questionnaires.</u>

Gariballa and Bashir argue that although they did not check the appropriate boxes in their alleged Charges relating to disability and age/disability discrimination respectively, they "stated equivalent words in the brief space provision" to put Defendants on notice that disability and age discrimination were alleged.  Opp. at 17.  As is evident from their DCOHR Intake Questionnaires, in response to the question of on what basis did they feel they were discriminated against, both Gariballa and Bashir wrote/checked national origin.  *See* ECF 29-7 and ECF 29-8.

In the space where the complainant is asked to write a "detailed statement of the incident" of discrimination, Gariballa wrote:

> I have discovered during past several month[s] that colleague of Saudi heritage who has worked in our office in a clerical capacity for 6 year[s] gets preferential treatment over myself, a non-Saudi, who has worked as an accountant and human resources person at the office for over 22 years.  Discreination [sic] exists in the area of end of service compensation.

ECF 29-7.  Contrary to her assertion in the Opposition, nowhere did Gariballa use the word "disability" or <u>even mention a medical condition</u> so as to put Defendants on notice of these claims.

Similarly, although Bashir mentions his medical condition in his Intake Questionnaire, he does so in the context of a Saudi comparator with a disability being treated better than him "on the basis of national origin", writing: "I have recently discovered evidence of discrimination on the basis of national origin in the treatment of an Embassy employee of Saudi origin, who received five years of continuous salary for his disability despite being able to continue working."

ECF 29-7. Further, nowhere in the Intake Questionnaire does Bashir even mention his age or the age of anyone else, so as to put Defendants on notice of any age discrimination claim.

Accordingly, because Gariballa and Bashir only alleged "national origin" discrimination, Gariballa's ADA claim and Bashir's ADEA, ADA, and DCHRA claims must be dismissed for failure to exhaust administrative remedies. *See Haynes v. D.C. Water and Sewer Auth.*, 924 F.3d 519 (D.C. Cir. 2019) (affirming dismissal of race and age claims where plaintiff failed to check the boxes for race and age and did not mention discrimination on these bases in the Charge).

**C.     The Embassy and The Kingdom Are Not "Employers" under the DCHRA, and Plaintiffs Failed to Oppose This.**

Plaintiffs have failed to address Defendants' argument that, as a sovereign government, they are not "employers" as defined in the DCHRA. "It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) (Walton, J.). In a similar case, *Adetoro v. King Abdullah Academy*, 585 F. Supp. 3d 78, 82 (D.D.C. 2020), the court held that the plaintiffs' "fail[ure] to address how Section 1981 applies to foreign governments notwithstanding jurisdiction under the FSIA" rendered that argument "conceded".

**D.     Gariballa Has Released Her ADA and Breach of Contract Claims.**

In the Opposition, Gariballa asserts, for the first time, that her breach of contract claim (but not her ADA discrimination claim) should not be dismissed because she claims she was not informed that the Acknowledgement of Receipt of Severance Payment and Full Release of Claims ("Release") was "a final payment or settlement", and that she was "duped into signing it" because of her "lack of vision." Opp. 19. Notably, this post-hoc assertion is inconsistent with the facts

pleaded by Gariballa in the Complaint:

> On October 23, 2018, the Embassy provided Gariballa with a partial severance payment of $25,385.60, indicating additional payments were forthcoming.  After a 9-month period without income, Gariballa was struggling to pay bills and was at risk of losing her home. Upon information and belief, the Embassy used Gariballa's dire circumstances to pressure her to accept a partial payment under duress.

Compl. ¶ 144.  In other words, she was well aware of what she was signing and did so because she wanted to receive the money.  "In the District of Columbia (and as a general rule of contract law), a party's signature on a contract binds that party to the terms of the contract, even if that party is ignorant to the terms of the contract."  *Weaver v. Bratt*, 421 F. Supp. 2d 25, 32 (D.D.C. 2006).

Gariballa's invitation for the Court to set aside the settlement on the grounds of fraud and misrepresentation should be declined.  Gariballa's after-the-fact, "bare, unsworn allegation" that she was duped into signing the release because of her vision "comes nowhere near the standard for a claim of duress."  *Duma v. Unum Provident*, 770 F. Supp. 2d 308, 314 (D.D.C. 2011).  Indeed, in *Duma*, the court similarly upheld a settlement agreement and release, despite the plaintiff's claims that she was unable to read the agreement and release "because the notary allegedly made it impossible".  *Id*. at 313-14.  In reaching this conclusion, the court reasoned that, like here, "a victim of duress may be held to have ratified the agreement by accepting its benefits".  *Id*. at 314 (quoting *Wright v. Foreign Serv. Grievance Bd*., 503 F. Supp. 2d 163, 174 (D.D.C. 2007)).

In support of her argument that the Court should "set aside" the Release on the grounds of "fraud and misrepresentation at the time of execution", Gariballa cites to *Sununu v. Philippine Airlines, Inc*., 792 F. Supp. 2d 39 (D.D.C. 2011).  However, the court in *Sununu* held that even if the plaintiffs had prevailed on their allegations that the contract was the product of fraud, the court would not set aside the contract because "[a] party's power to avoid a contract due to fraud or duress is lost if, after the circumstances that made the contract voidable have ceased to exist, the

party 'manifests to the other party his intention to affirm it or acts with respect to anything that he has received in a manner inconsistent with disaffirmance.'" *Id.* at 52 (quoting *Schmidt v. Shah*, 696 F. Supp. 2d 44, 63 (D.D.C. 2010)).  Thus, since the plaintiffs in *Sununu* had "invoiced [the defendant] and accepted $50,000 in payment", the contract was valid because, "[a]s a matter of law, they cannot attempt to both collect on the contract and void it for fraud." *Id.* at 53.  Similarly, here, because Gariballa accepted the $25,385.60 payment, she cannot now void the Release.

With respect to Gariballa's ADA discrimination claim, Gariballa's failure to oppose Defendants' argument (Section IV(C)(2) of the Memorandum in Support of Motion to Dismiss), that her ADA claims are barred by the release, renders this "unaddressed argument[] as conceded." *Wannall*, 775 F.3d at 42.

**E.    The Breach of Contract Claims Brought by Gariballa, Bashir, and Zamrawy Are Time-Barred, and Equitable Tolling/Estoppel Is Not Warranted.**

In the Opposition, Gariballa, Bashir, and Zamrawy acknowledge that "the statute of limitations for breach of contract is three years, and [that] it begins to run at the time of breach. Opp. 17-18.  However, they claim that the Court should equitably toll the statute of limitations or that Defendants should be equitably estopped from invoking the statute of limitations because Defendants allegedly lured them into believing Defendants were not breaching their contracts and engaged in "protracted negotiations."  Opp. 18.  As explained in Section II(B)(6) *supra*, these equitable remedies are available "only in extraordinary and carefully circumscribed instances", which are not present here.  *Washington*, 160 F.3d at 753.

Gariballa, Bashir, and Zamrawy were terminated from employment in February 2018, August 2017, and June 2019, yet they waited approximately five years, five and a half years, and three years and eight months respectively before filing their breach of contract claims.  *See* Compl.. p. 6, ¶¶ 18-20.  Clearly, they were not diligently pursuing their rights.  *See Cristwell*, 224 F. Supp.

at 61 (Walton, J.) (refusing to "excuse filing obligations on equitable grounds solely because [the] parties were engaged in settlement discussions").

In support of their argument that their breach of contract claims should be found timely on equitable grounds, Gariballa, Bashir, and Zamrawy cite to *Chung v. U.S. Dept. of Justice*, 333 F.3d 273, 279 (D.C. Cir. 2003) for the proposition that they "would be reluctant to file a complaint with the EEOC for fear [they] would jeopardize [their] chances to gain relief [] voluntarily."  Opp. 18. However, this argument is unavailing, as Gariballa, Bashir, and Zamrawy actually did file Intake Questionnaires with the DCOHR.   Moreover, their Intake Questionnaires were filed in January/February 2020, at which point had they filed their breach of contract lawsuits, they would have been timely filed within the statute's three-year limitations period.  *See* ECF 29-7, ECF 29-8, and ECF 29-9.  For the foregoing reasons, the Court should not toll the statute of limitations on the breach of contract claims untimely filed by Gariballa, Bashir, and Zamrawy.

**F.      Elkholy Fails to Demonstrate that Age Was the "But-For" Cause of His Termination.**

In the Opposition, Elkholy contends that his age discrimination claim under the DCHRA does not require "but-for" proof of causation.  Opp. 19.  However, Defendants asserted that Elkholy's <u>ADEA</u> (not DCHRA) claim requires him to "prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action."  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009).  Elkholy's failure to oppose this argument renders it "conceded".  *Hopkins*, 284 F. Supp. 2d at 25 (Walton, J.).

Even if it had not been conceded, Elkholy's citation to *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52 (D.D.C. 2010) to suggest that "but-for" causation is the wrong standard for an age discrimination claim brought against a foreign state is inapposite.  In *Valore*, the court held that "but-for" causation was not required to bring a claim under the <u>terrorism exception</u> contained in Section 1605A of the FSIA, <u>not</u> an age discrimination claim under the ADEA, because the

terrorism exception in Section 1605A itself provides for a "[p]rivate right of action" by expressly stating that a "foreign state that is or was a state sponsor of terrorism… shall be liable.. for personal injury or death **caused** by [such] acts."  28 U.S.C. § 1605A(2) (emphasis added).

Unlike the terrorism exception to the FSIA, the commercial activity exception to the FSIA contains no such private right of action and, instead, merely provides a basis for overcoming the foreign state's presumption of immunity and for holding the foreign state liable for actions that violate other laws.  28 U.S.C. § 1605(a)(2).  Indeed, as the court in *Adetoro* explained, the "commercial activity exception" under the FSIA "address[es] *if* a foreign entity can be sued in the United States… [b]ut even if the FSIA's commercial activity exception provides justification, a court still must decide *what* the sovereign entity can be sued for." 585 F. Supp. 3d 78, 82 (emphasis in original).  Accordingly, courts have held that "but-for" causation is required to hold a foreign state liable for age discrimination claim under the ADEA.  *See*, *e.g.*, *Barot v. Embassy of the Republic of Zambia*, 299 F. Supp. 3d 160, 178 (D.D.C. 2018) (holding that the plaintiff must show "that age was the 'but-for' cause" of the Embassy's decision to terminate her).

In the Opposition, Elkholy fails to address Defendants' argument that he has not stated a plausible claim for age discrimination because he has not shown that his age was the "but-for" cause of his termination.  In accordance with *Wannall*, this argument should be deemed "conceded. 775 F.3d at 428.  Even if the Court treats this argument as not having been conceded, it should, nonetheless, dismiss Elkholy's claim because his allegations in the Complaint make clear that age was not the "but-for" cause of his termination.  Instead, Elkholy alleges that he was a "witness to high-level fraud at the Embassy which he reported to Defendants" and "[a]fter this incident, within a month, on March 24, 2021, Elkholy received a termination letter".  Compl.. P. 17, ¶¶ 66-67. This conflicting assertion renders his age claim nonviable.  *Adetoro*, 585 F. Supp. 3d at 83

(dismissing complaint where plaintiffs offered "a buffet of reasons" for their terminations).

G.    **All claims brought by Elkholy, Hanna, Bashir, and Zamrawy should be dismissed on the grounds of *forum non conveniens*.**

Elkholy, Hanna, Bashir, and Zamrawy argue, notwithstanding the fact that "the law recognizes a strong presumption in favor of arbitration" that the forum selection clauses contained in their Employment Contracts do not encompass their claims.  Opp. 20 (quoting *Imperial Valet, Inc. v. Woodard*, 2015 WL 13158506, at *1 (D.D.C. 2015)).  Specifically, they suggest that the forum selection clauses in their Employment Contracts are too "narrowly drafted" to encompass their "age discrimination claims averred in violation of the ADEA and DCHRA" because the clauses in their Employment Contracts use the phrase "arising under".  Opp. 21.

In support of this argument, Elkholy, Hanna, Bashir, and Zamrawy cite to *Dowley v. Dewey Ballentine, LLP*, 2006 WL 1102768 (D.D.C. 2006) as follows:

> Courts have distinguished a "narrow" arbitration clause that "covers only specified types of disputes" from a **"broad" arbitration clause that provides generally that disputes "arising under"** or "concerning" the contract are covered… The [United States] Supreme Court has indicated that when an arbitration agreement contains the dual phrases "arising out of or relating to," it is proper to interpret the agreement broadly to cover matters that touch upon the contract to be arbitrable.

*Id*. at *7 (quoting *Nat'l R.R. Passenger Corp. v. Boston and Marine Corp*., 850 F.2d 756,762 (D.C. Cir. 1988)) (emphasis added).  However, contrary to Plaintiffs' assertion, the *Dowley* case makes clear that clauses using the "arising under" language are to be broadly construed.  *Id*.  ("Although the arbitration clause does not contain the words 'relating to,' the phrase 'arising out of' should be interpreted broadly to cover all of the disputed claims in this case.").  Moreover, "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute[] [d]oubts should be resolved in favor of coverage."  *United Steelworkers of Am. v. Warrior & Gulf Nav. Co*., 363 U.S. 574, 582-83 (1960).

Here, similar to the forum selection clauses in *D&S Consulting, Inc. v. Kingdom of Saudi*

*Arabia*, 961 F.3d 1209, 1213 (D.C. Cir. 2020) and *Dahman v. Embassy of the State of Qatar*, 815 F. App'x 554 (D.C. Cir. 2020), the forum selection clauses provide that disputes arising over the contract shall be resolved in Saudia Arabia.  Consequently, the claims of Elkholy, Hanna, Bashir, and Zamrawy for violations of the ADEA, ADA, DCHRA, and for failure to pay end-of-service/severance-related payments are all based on their employment and the Employment Contracts underlying them.  Accordingly, the Court should dismiss all of the claims brought by Elkholy, Hanna, Bashir, and Zamrawy on *forum non conveniens* grounds.

Moreover, in the Opposition, Elkholy, Hanna, Bashir, and Zamrawy only argue that the forum selection clauses in their Employment Contracts are not broad enough to encompass their age discrimination claims under the ADEA and DCHRA.  They fail to address coverage of the forum selection clause over their remaining claims: (i) violation of the ADA (Bashir and Zamrawy); and (ii) breach of contract (Elkholy, Hanna, Bashir, and Zamrawy).  Consequently, the Court should deem that the forum selection clauses cover their ADA and breach of contract claims in accordance with *Wannall*, 775 F.3d at 428.

Even if the Court does not find Elkholy, Hanna, Bashir, and Zamrawy have conceded this argument, their breach of contract claims for failure to pay end-of-service/severance-related payments unquestionably fall within the purview of the forum selection clause, "[a]fter all, the allegedly breached contract [] contains the forum-selection clause."  *Samirah v. District Smiles, PLLC*, 2021 WL 918082, at *3 (D.D.C. 2021).

Defendants also argue that the Board of Grievances in Saudi Arabia and the Civil Service Bureau[5] in the Kingdom of Saudi Arabia are "unavailable" to Plaintiffs because of political,

---

[5] The fact that the Civil Service Bureau is the selected forum in Bashir's Employment Contract further reflects that Plaintiffs are civil servants under Saudi Arabian law.

security, and institutional reasons and because they have differing adjudication methods than those in the United States.  However, the U.S. Court of Appeals for the District of Columbia flatly rejected such arguments and found the Board of Grievances in Saudi Arabia to be an appropriate forum, reasoning:

> DSCI contends, for instance, that Saudi Arabia is an unsafe place to travel, that the judicial system there is neither transparent nor independent, and that the system discriminates against foreign parties and follows deficient substantive and procedural rules. But in the case of mandatory forum-selection clause, "we need not ask whether the location it identifies is available, adequate, or best for the parties' private interests." Rather, the parties "have already told us that it meets these criteria" by "agreeing to litigate there," and "we can assume that they selected" a forum "adequate to litigate their claims and to protect their private interests."

*D&S Consulting, Inc*., 961 F.3d at 1214 (quoting *Azima v. RAK Inv. Auth.*, 926 F.3d 870, 875 (D.C. Cir. 2019)).  For the foregoing reasons, the Court should dismiss all of the claims brought by Elkholy, Hanna, Bashir, and Zamrawy on *forum non conveniens* grounds.

**H.    Plaintiffs' Demand for Punitive Damages Must Be Stricken Pursuant to the FSIA.**

In the Opposition, Plaintiffs assert that "the FSIA amendments and trends in ruling no longer preclude Plaintiffs from seeking punitive damages against Defendants."  Opp. 24.  In support of this assertion, Plaintiffs cite to Section 1605A of the FSIA (the terrorism exception), as well as *Beer v. Islamic Republic of Iran*, 789 F. Supp. 2d 14 (D.D.C. 2011).  However, as discussed in Section II(F) above, Section 1605A of the FSIA is only applicable to a foreign state being sued because "it is or was a state sponsor of terrorism", not to a foreign state being sued for other claims. 28 U.S.C. § 1605A(c).

Section 1605A's terrorism exception, unlike Section 1605's commercial activity exception, expressly provides for a "private right of action" that includes "punitive damages." 28 U.S.C. 1605A(c).  The court in *Beer* explained the rationale behind this distinction as follows:

In early 2008, Congress moved to reverse this trend [of not awarding punitive

damages under the terrorism exception of the FSIA] through amendments to the FSIA enacted as part of the National Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110–181, § 1083, 122 Stat. 3. 338–44 (2008) ( "NDAA"). These Amendments struck § 1605(a)(7) and replaced it with the current state-sponsored terrorism exception, which is codified at 28 U.S.C. § 1605A. **Among numerous changes to the law, § 1605A now "provides for the recovery of punitive damages in suits based on acts of terrorism."** *Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163, 167 (D.D.C. 2010) (citing 28 U.S.C. § 1605A(c)). Over the past three years, FSIA courts have resumed awarding punitive damages pursuant to this statute—a trend aided by the NDAA's provision for retroactive application of § 1605A.

789 F. Supp. 2d at 18 (emphasis added).

Thus, while Section 1605A is applicable to lawsuits for state-sponsored terrorism under the FSIA, Section 1606 of the FSIA governs other claims, including those, like the instant action, brought under Section 1605's commercial activity exception:

> **As to any claim for relief with respect to which a foreign state is not entitled to immunity under section 1605** or 1607 of this chapter, the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances; **but a foreign state except for an agency or instrumentality thereof shall not be liable for punitive damages**; if, however, in any case wherein death was caused, the law of the place where the action or omission occurred provides, or has been construed to provide, for damages only punitive in nature, the foreign state shall be liable for actual or compensatory damages measured by the pecuniary injuries resulting from such death which were incurred by the persons for whose benefit the action was brought.

28 U.S.C. § 1606 (emphasis added).

Accordingly, Plaintiffs' assertion that punitive damages are available to them under the terrorism exception of Section 1605A of the FSIA is unfounded.  *See Lee v. Taipei Econ. and Cultural Representative Office*, 2010 WL 2710661 (S.D. Tex. 2010) (holding that punitive damages were not available in the plaintiff's age discrimination claim because the defendant was a foreign state under the FSIA and Section 1606 applied); *see also Barot v. Embassy of Republic of Zambia*, 11 F. Supp. 3d 24, 28 n.2 (D.D.C. 2014), *rev'd on other grounds*, 785 F.3d 26 (D.C. Cir. 2015) (plaintiff conceding that she was "not entitled to a jury trial or punitive damages under

FSIA" on her discrimination claims).

Apparently recognizing that Section 1605A of the FSIA is inapplicable and that Section 1606 of the FSIA governs, Plaintiffs next assert that punitive damages may be awarded because the Embassy is "an agency and instrumentality". Opp. at 24. This assertion is contrary to applicable law.

The FSIA defines a "foreign state" as "a political subdivision of a foreign state or an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a). "Courts have uniformly found that embassies are 'integral part[s] of a foreign state's political structure,' and therefore appropriately considered 'foreign states' for FSIA purposes", not "an agency or instrumentality" *De Sousa v. Embassy of Republic of Angola*, 229 F. Supp. 3d 23, 26 (D.D.C. 2017) (quoting *Transaero, Inc. v. La Fuerza Aerea*, 30 F.3d 148, 151 (D.C. Cir. 1994)). *See also Howe v. Embassy of Italy*, 68 F. Supp. 3d 26, 33 (D.D.C. 2014) (Embassy is a foreign state under the FSIA, not an agency or instrumentality); *Embassy of Fed. Republic of Nigeria v. Ugwuonye*, 901 F. Supp. 2d 136 (D.D.C. 2012) (same). Accordingly, punitive damages are not available in this case, and the Court should grant Defendants' Motion to Strike.

## III. <u>CONCLUSION</u>

For the reasons stated above and in the Motion to Dismiss, the Complaint should be dismissed because, not only are Defendants immune under the FSIA, but, as shown above and in the Motion to Dismiss, Plaintiffs' claims are fatally flawed for the reasons set forth in the table below (arguments with an asterisk reflect unopposed, conceded arguments).

| | Count I (ADEA) | Count II (DCHRA) | Count III (ADA) | Count IV (Breach of Contract) |
|---|---|---|---|---|
| **Elkholy** | • Forum Non Conveniens;<br><br>• Failed to state plausible claim*. | • Forum Non Conveniens;<br><br>• Defendants are not employers*;<br><br>• Time-barred*. | Not asserted. | • Forum Non Conveniens*. |
| **Hanna** | • Forum Non Conveniens;<br><br>• Failed to exhaust administrative remedies. | • Forum Non Conveniens;<br><br>• Defendants are not employers*;<br><br>• Time-barred*. | Not asserted. | • Forum Non Conveniens*. |
| **Gariballa** | Not asserted. | Not asserted. | • Failed to exhaust administrative remedies*;<br><br>• Released and waived claim*. | • Time-barred;<br><br>• Released and waived claim. |
| **Bashir** | • Forum Non Conveniens;<br><br>• Failed to exhaust administrative remedies*. | • Forum Non Conveniens;<br><br>• Defendants are not employers*;<br><br>• Time-barred*. | • Forum Non Conveniens*;<br><br>• Failed to exhaust administrative remedies*. | • Forum Non Conveniens*;<br><br>• Time-barred. |
| **Zamrawy** | • Forum Non Conveniens;<br><br>• Failed to exhaust administrative remedies*. | • Forum Non Conveniens;<br><br>• Defendants are not employers*;<br><br>• Time-barred*. | • Forum Non Conveniens*;<br><br>• Failed to exhaust administrative remedies*. | • Forum Non Conveniens*;<br><br>• Time-barred. |

Defendants respectfully request that this Court dismiss the Complaint in its entirety, with prejudice and without leave to amend.

Dated: August 23, 2024

Respectfully submitted,

/s/ Edward Lee Isler
Edward Lee Isler, DC Bar No. 417076
Lori H. Turner, DC Bar No. 495530
Micah E. Ticatch, DC Bar No 1005398
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
eisler@islerdare.com
lturner@islerdare.com
mticatch@islerdare.com
*Attorneys Appearing Specially for Defendants*
*The Royal Embassy of the Kingdom of Saudi*
*Arabia and The Kingdom of Saudi Arabia*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of August 2024, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Sylvia J. Rolinski, Esq.
Rolinski Law Group, LLC
14915 River Road
Potomac, MD 20854
T: (301) 987-0202 (ext. 1)
F: (301) 263-7100
SJR@Rolinski.com
*Attorney for Plaintiffs*

    /s/ Edward Lee Isler
Edward Lee Isler, DC Bar No. 417076
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
eisler@islerdare.com
*Attorney Appearing Specially for Defendants*
*The Royal Embassy of the Kingdom of Saudi Arabia*
*and The Kingdom of Saudi Arabia*